## TRAILING CRIMINALS WITH BLOODHOUNDS.

[Circuit Court of Stark County.]

HARRISON BAUM v. THE STATE OF OHIO.

Decided, February, 1904.

*Evidence—Contradictory Statements may be Explained by Witness— Effect of Such Statements—Court Stenographer May Impeach Witness, When—Trailing with Bloodhounds—Testimony as to Competent, When—Character of Such Testimony—How to be Considered by Jury—Failure to Charge upon a Point not Requested not Error—Effect to be Given Testimony as to Good Character—Criminal Law.*

1. It is not error to permit a witness, who has made statements out of court at variance with his testimony given in the trial of a cause, to explain or give his reasons, if he has any, for making the contradictory statements; such conflict in statement goes only to affect his creditibility and does not render him incompetent or necessarily render his testimony incredible.

2. Where it is claimed a witness, who testified before a grand jury, changed his testimony on the trial, an official court stenographer, who took his testimony before the grand jury in shorthand, may, as impeaching such witness, read his notes in evidence to the jury, if he remembers and can testify that at the time it was correctly taken, and that the notes contain all the evidence of the witness on the question at variance, although at the time he is called to tesify he has no independent recollection of his testimony.

3. Testimony as to trailing an alleged criminal by a bloodhound may be permitted to go to the jury as tending to connect him with the crime when there is testimony of some person, who has knowledge, that the dog used has been trained to follow tracks of human beings by scent, and its power of so discriminating has been tested as to its accuracy in trailing on one or more occasions.

4. Before evidence of the trailing of an alleged criminal is rendered competent it must be first shown that the dog was put on a trail at a point where the circumstances tend to show that the guilty person had been, or on a track which such circumstances indicate to have been made by him.

5. Evidence of the acts of bloodhounds in following a trail under conditions stated may be received as cumulative or corroborative evidence against the person toward whom other circumstances point as being guilty of the commission of the crime charged, and when this class of evidence is hedged about with these safe-guards of human and other testimony, bloodhound evidence is no more dangerous than any other class of circumstantial evidence.

6. Court failing to charge on a point on which counsel did not ask a charge is not error.

7. In a criminal case for assault with intent to kill, where the defendant put in evidence his previous good character, it is not error for the court to say to the jury, that "the weight to be given to the good character of the defendant for peace and quiet, must be such that the jury, under all the circumstances, think it should receive."

VOORHEES, J.; DONAHUE, J., and McCARTY, J., concur.

Error to the Court of Common Pleas of Stark County.

Plaintiff in error was indicted under Section 6820, Revised Statutes of Ohio, for shooting with intent to kill one Marion Fraze. He was tried and convicted under said indictment in the court of common pleas, and sentenced to the penitentiary for a term of twenty years. Error is prosecuted to this court, and among the errors assigned and especially urged as grounds for reversal are:

1.    That the court erred in the admission of evidence.

2.    That the court erred in the exclusion of evidence.

3.    That the court erred in its charge to the jury; and,

4.    That the verdict is against the weight of the evidence.

(1.)    As to the admission of evidence. It is contended that the court erred in permitting a witness for the state, Mrs. Fraze, to explain and give her reasons for making statements out of court at variance with her testimony given on the trial. It is competent and proper for a witness to explain his or her conduct or testimony which tends to affect the credibility of

the witness.  Where a witness is shown to have made contra-
dictory or even false statements, which from their nature might
have been prompted by an innocent motive, or a sinister one,
it is for the jury and not for the court to say, from all the
circumstances, to which motive it should be attributed.

If it were made to appear in the trial of a cause, civil or
criminal, that a witness out of court had stated something ma-
terial to the issue that was untrue, and he knew it to be un-
true, no matter what explanation he should make in justifica-
tion for his untrue statement, it necessarily tends to weaken
or detract from the credibility or weight to be given his testi-
mony; but it is entirely with the jury to say how much, as it
only affects his credit, and does not render him incompetent or
necessarily render his testimony incredible. *Brown* v. *The State,*
18 O. S., 496.

We think the court did not err in permitting Mrs. Fraze to
give her reasons for making these contradictory statements.

(2.) Was it error to admit the evidence of the witness, Fred
Marpe?

Marpe was one of the official stenographers of the court and,
as such, was present with the grand jury and took notes in
shorthand of the testimony of witnesses heard by the grand
jury in the investigation of the crime for which defendant in
error was indicted, tried and convicted.

The purpose of the testimony of Marpe was to show that
certain witnesses for the defense on the trial in common pleas
court gave testimony at variance with what they had testified
before the grand jury.  Marpe, as the official stenographer,
took the testimony of these witnesses in shorthand as given by
them before the grand jury.  It was contended by the state
that these witnesses on the final trial had changed their testi-
mony in material parts, and, to prove such variance, the sten-
ographer was called and produced his notes taken by him of
their testimony before the grand jury.  The record shows that
the witness had his notes before him; that he looked at them,
evidently read them before he testified; he did not read the
notes in evidence, but testified from memory, refreshed by the
examination of the notes taken by him before the grand jury.

The fact that this witness happened to be the official stenographer of the court has nothing to do with the admissibility of his evidence.  Any person who had heard the witness testify might have been called and examined upon the particular question as was the witness, Marpe.  His evidence comes under the well known rule of evidence for the contradiction of a witness by showing he has made statements out of court, or given evidence on a former trial or hearing, whether under oath or not under oath.  But being the official stenographer, after testifying that he then knew that at the time of the former hearing he had taken accurate notes of the testimony sought to be proven, he might read the notes in evidence, although he was not able, by refreshing his memory from the notes, to testify from memory or say he knew and remembered the evidence then given.

Where it is claimed a witness, who testified upon a former trial, has changed his testimony, and the official stenographer, who took the testimony at the former trial, produces his notes in shorthand of the testimony of the witness, such stenographer may read his notes to the jury as affecting the testimony of the witness, if he remembers that at the time the testimony was given it was carefully taken and that the notes contained all the testimony of such witness, although at the time he is called to testify he has no independent recollection of what the witness did testify.  Underhill on Evidence, p. 171; Rice on Evidence, Vol. 1, p. 399; *Bennett* v. *Syndicate Ins. Co.*, 39 Minn., 254; 2 Rice on Evidence, 658.

There was no error in admitting the evidence of the witness, Marpe.

(3.)  The next error complained of is more difficult than the two just considered; that is, in the admission of evidence showing the conduct of blood hounds that were used in tracking the supposed perpetrator of the crime.  This raises a question of evidence that is practically unsettled in this state; and there is no authority of the court of last resort in Ohio upon the question.  In the case of *State* v. *Houck*, in Knox county (not reported), such evidence was received and came up to this court on error, but the court was not required to pass upon

its competency as the judgment of the court below was affirmed *pro forma* without considering this particular question. We have carefully considered the able opinion of Judge Van Pelt in the case of *State* v. *Hull,* 3 Nisi Prius R., p. 125, and we are inclined to adopt the reasons there given for the admission of such evidence, rather than that of Judge Sullivan against it, found in the case of *Brott* v. *State,* Supreme Court of Nebraska, reported in 97 Northwestern Reporter, p. 593. It must be conceded that there are some strong reasons given in the Nebraska case against the admission of such evidence. We do not hesitate in holding, however, that the receiving of such evidence violates no constitutional rights of an accused party.

The admissibility of the evidence depends upon the preliminary proof of persons familiar with the habits, instincts and faculties of these animals; what they have done, and can do in following a trail made by a human being up to the person, or abode of the one making or leaving the trail and scent behind him. If it were shown that such animals can exhibit such instinct and have such faculty in this regard with any degree of accuracy, then its conduct in a given case may be admitted in evidence, its effect and weight to be left to the jury.

From a careful examination of the authorities to which we have had access (*Hodge* v. *State,* 98 Ala., 10; 39 Am. St. Rep., 17; *Pedigo* v. *Com.,* 103 Ky., 41; 42 L. R. A., 432; *Simpson* v. *The State,* 111 Ala., 6; *State* v. *Moore,* 129 N. C., 494; 55 L. R. A., 96), the rule for admitting this class of evidence may be summarized as follows:

1st. The blood hound in question must be shown to have been trained to follow human beings by their tracks and scent, and to have been tested as to its accuracy in trailing on one or more occasions.

2d. The evidence of the acts of blood hounds in following a trail may be received merely as cumulative or corroborative evidence against the person toward whom other circumstances point as being guilty of the commission of the crime charged.

The admission of this class of evidence is therefore hedged about with abundant safeguards in the way of other, and human testimony, and as long as these rules are adhered to,

blood hound evidence is no more dangerous than any other class of circumstantial evidence.

There was no claim made by the state in this case that the evidence as to the actions of the blood hounds in trailing the foot prints appearing at the scene of the crime to the home of the defendant was conclusive, but as a circumstance to be taken by the jury in connection with the other facts and circumstances in the case.

Like all other evidence in human affairs there is an infirmity about it. But if it must be excluded upon that ground, then it would be impossible to furnish any evidence except direct evidence in a trial of any cause; and even direct evidence would be open to the same objection because there is that infirmity of memory, bias, and prejudice of witnesses, if not at times actual dishonesty. So we think all the arguments urged for the exclusion of this class of evidence might be offered against any evidence. We are again brought to the question whether or not it has any probative force, and taking the evidence in this record as to the breeding, the training, and the conduct of these dogs, we are of the opinion that the evidence was properly admitted and its weight left to the jury. We are hopeful that this question will soon be settled by our Supreme Court. We consider it of great importance in the administration of the criminal laws of the state. Our conclusion is that the admission of this evidence was not prejudicial error.

(4.) The only question made or error complained of in excluding evidence, is the exclusion of the record of a case pending between Marion Fraze, the prosecuting witness, and one Thomas Beans. The questions in this case are of a character that it was proper for the defense to show that there were others, besides the accused, who were on unfriendly terms with Fraze; others who might have had motives, engendered by anger, hatred, or ill-will, to do him violence, and it was proper to show that he had been involved and was, at the time of the commission of this assault upon him, in litigation with others; but we do not consider that it would have been proper to introduce in evidence the record of these suits. It was sufficient

to show that there were controversies between him and others. There was no error in excluding such records.

(5.)     There are objections urged against the charge of the court, in this: That the charge did not cover or touch upon certain conditions in the evidence. The record does not show that there was any special request to charge touching these various points.

In the absence of such special request it was not error not to charge further in relation to them than was given in the general charge. The only consideration we might give to these contentions would be in reviewing the record as to the weight of the evidence. It might become important in determining whether or not the questions of fact were disposed of under a fair and proper charge, a charge full enough to enable the jury to grasp the issues and controversies in the case, and we have so considered these objections, and find no error in the court in omitting to further charge in the absence of special request so to do.

(6).     It is contended that the court erred in its charge in reference to evidence offered by the defendant of his good character. On page 754 of the record the court states:

"The weight to be given to the good character of the defendant for peace and quiet must be such that the jury under all the circumstances think it should receive."

The charge is supported and in line with the holding in *Harrington* v. *State*, 19 O. S., 264. Judge White, on page 269, quotes with approval the following rule:

"That the testimony is to go to the jury and be considered by them in connection with all the other facts and circumstances, and if they believe the accused to be guilty, they must so find notwithstanding his good character."

Taking the charge as a whole, the defendant's rights were guarded and protected in every paragraph, and the care and caution the jury were directed to exercise were fully impressed upon the mind of the jury, as well as the certainty required as to the defendant's guilt before they could find him guilty. We find no error in the charge.

(7). Coming now to the consideration of the weight of the evidence. At the threshold we are confronted with the well settled rule of law that it is not the province of a reviewing court to disturb the verdict of the jury simply because the court might not have found as did the jury upon the issue of facts. Looking through this whole record, we can not say that the verdict is against the manifest weight of the evidence. Aside from the question of the trailing of the dogs, there is an abundance of testimony tending to prove the guilt of the defendant. If the evidence were true, it certainly justified the verdict of guilty.

Much of the evidence in this case is circumstantial. It may be said in some instances, that such evidence is not so satisfactory as direct proof. On the other hand some times circumstances are more convincing than direct evidence, for the reason that the bias, prejudice and untruthfulness of witnesses may leave more doubt in the mind of the jury as to its reliability than would positive circumstances inconsistent with any other theory, than the theory of the defendant's guilt. As in this case, the circumstances of the tracks of a person approaching the window of the prosecuting witness' house, through which the shot was fired, are significant; as they approach the window, as shown by the foot prints, they were ordinary strides of a person walking and the same identical tracks leaving the window were strides made by a person running, as shown by the length and depth in the soft earth. These are strong circumstances tending to establish the fact that the person making these tracks was the guilty party. A number of witnesses testified that these foot prints coincided with the "gum" boots of the defendant and were identical with tracks made by these boots. The peculiar characteristic, such as the "heel tap" on the defendant's boots, appeared and was shown by the tracks approaching and leaving the house as before stated. There was also evidence showing that the defendant, on occasions other than the occasion when the shooting was done, had been seen in the night season prowling about the Fraze house and committing depredations and menacing the peace and quiet of that home. All of which tended to show

that he had a fixed purpose of committing some violence upon Fraze's person. This evidence of course was disputed by the defendant, yet the jury had the right to believe it and no doubt did believe it to be true.

The shotgun in evidence furnished some additional circumstances that the crime was committed with a similar weapon. Witnesses familiar with guns examined the gun in question shortly after the shooting and testified that one barrel had recently been discharged. The father of the defendant testified that the last time the gun, a double-barreled shotgun, had been fired was two or three days before the alleged shooting of Fraze, and then only one barrel was used. If he was correct in this, the gun barrel so used would have been dry and would have shown no indication of having been recently discharged, as did the barrel examined by the witnesses the morning after the shooting of Fraze the night before.

The conduct of the defendant when the officers came to his home the night the crime was committed is significant. A person who was present said that Marion Fraze had been shot; defendant answered, "That is what you want me for." No one had up to this time accused him. That he should accuse himself, if innocent, is a circumstance against him. It has frequently been remarked, and is the experience of mankind, that a person, who is the depository of a fatal secret, which he is anxious to conceal, is likely to give expression by word or act of something touching the secret; as if the mind were anxious to unburden itself by giving out its workings as far as it could with safety. True, if he had said this after someone had spoken about Marion Fraze having been shot and that he was suspected or charged with it, the remark "That is what you want me for" would have much less force, as a circumstance pointing to him as the guilty party; but that he made the statement at all has significance, and, taken with other circumstances, was a very strong incriminating statement against him.

Without further reference in detail to the evidence, but taking the whole record, we can not say that the verdict of the jury is manifestly against the weight of the evidence. We do not think

it is, and, therefore,. the judgment of the court is affirmed at costs of plaintiff in error and the cause remanded for execution.

Judgment affirmed.

*Shields & Pomerene*, for plaintiff in error.

*Robert H. Day*, for defendant in error.