Carlton HATCHER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 179S21.

Supreme Court of Indiana.

Jan. 8, 1981.

James A. Neel, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted in a trial by jury, of two counts of armed robbery and sentenced to imprisonment for two consecutive terms of ten (10) years each. We find it necessary to reverse the judgment because of impermissibly suggestive identification procedures employed by the State.

Two black males entered a restaurant during the early afternoon. By use of guns and threats, they took money belonging to the business entity from one employee, Miss Seybert, and personal funds from another employee, Mr. Doyle. Both employees saw the bandits during the episode.

Indianapolis Police Officer Gillespie conducted photographic displays on several occasions for Seybert and Doyle. Following one such occasion, Doyle selected a photograph of Defendant as portraying one of the perpetrators of the robberies. The record reveals that this was the only occasion on which Defendant's picture was displayed to the victims. Approximately one week later, Seybert and Doyle each selected the defendant and Johnny Jones in separate "lineups" arranged by the police and identified them as the robbers. The Defendant had been charged with the crimes at the time he was displayed in the "lineups." He was not provided with counsel for the proceedings, and the record does not disclose whether or not he had been previously advised of his right to such counsel.

Defendant filed a pre-trial motion to suppress identification testimony from Doyle and Seybert upon the grounds that they had identified him at police "lineup" proceedings conducted subsequent to his arrest for the offense and in the absence of his counsel. The motion was overruled. At trial, over timely objection, Doyle and Seybert were permitted to identify the Defendant as one of the persons who robbed them and also to testify that they had previously so identified the defendant at the aforementioned "lineups."

The Sixth Amendment right to counsel attached at or after the time that adversary judicial proceedings had been initiated against the accused. *Kirby v. Illinois,* (1972) 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411, 417 (plurality opinion). In *United States v. Wade,* (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Kirby v. Illinois, supra,* the United States Supreme Court held that the right to counsel encompasses the right to have an attorney present at a pre-trial "lineup" identification procedure conducted at or after the initiation of such criminal proceedings. In this State, the filing of an information or indictment begins the formal criminal process. *Winston v. State,* (1975) 263 Ind. 8, 11, 323 N.E.2d 228, 230. Therefore an accused is entitled to have counsel present at any "lineup" which is conducted subsequent to the filing of an information or indictment. *Kirby v. Illinois, supra; United States v. Wade, supra; Winston v. State, supra.* Thus, it is clear that Defendant had a Sixth Amendment right to have counsel present at the "lineup" conducted in this case.

Moreover, when police conduct an uncounseled "lineup" at a time when the defendant is entitled to counsel, the sanctions are clear. Evidence of a witness' identification of the accused at the "lineup" is *per se* inadmissible at trial. *Gilbert v. California,* (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. Defendant specifically challenges only the admission of evidence of the "lineup" identification. However, the conduct of an illegal "lineup" calls into question the admissibility of the witness' in-court identification. *United States v. Wade, supra.* Thus, a witness' in-court identification testimony must also be sup-

pressed, unless the prosecution can establish by clear and convincing evidence that the in-court identification has an independent origin and is not the product of the illegal "lineup." *Gilbert v. California, supra; United States v. Wade, supra; Morgan v. State,* (1980) Ind., 400 N.E.2d 111, 113; *Love v. State,* (1977) 266 Ind. 577, 581, 365 N.E.2d 771, 773. We must first determine, then, whether the facts of this case reveal a denial of Defendant's Sixth Amendment right to counsel.

The State argues that Defendant waived his right to have an attorney present. Officer Gillespie informed him, six days in advance, that he would be placed in a "lineup." Gillespie also told him, at that time, that he had a right to have an attorney present. The Defendant, however, made no response to this information, and Gillespie did not discuss Hatcher's rights with him any further. Gillespie did not know at that time whether or not the defendant had counsel. Apparently, he did have counsel in an unrelated City Court matter, but the record does not disclose that an attorney had entered an appearance in this case. Neither does it disclose that Defendant did, in fact, have counsel in this case. The States argues, however, that Defendant's knowledge of the impending "lineup" and of his right to have an attorney present, together with his failure to have an attorney present effected a waiver of that right.

The Court in *United States v. Wade, supra,* did indicate that a Defendant may waive his right to have counsel present at the "lineup." After discussing the need for and the purpose of having counsel in attendance, the Court said: "Thus both Wade and his counsel should have been notified of the impending lineup, and counsel's presence should have been a requisite to conduct of the lineup, absent an 'intelligent waiver.' *See Carnley v. Cochran,* (1962) 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70." 388 U.S. at 237, 87 S.Ct. at 1937, 18 L.Ed.2d at 1163. However, neither the United States Supreme Court nor this Court has ever been required to determine the standards to be applied in resolving whether or not to invoke such a waiver.

Waiver of the right to counsel in other contexts has received extensive examination. Such a waiver must be shown to have been knowingly, voluntarily and intelligently made. *Johnson v. Zerbst,* (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357. This showing must appear on the record. *Id.; Russell v. State,* (1978) 270 Ind. ——, 383 N.E.2d 309; *Owen v. State,* (1978) 269 Ind. 513, 381 N.E.2d 1235. Further, courts will indulge every reasonable presumption against a waiver. *Johnson v. Zerbst, supra.* In addition, the right to counsel does not depend on a request. *Carnley v. Cochran,* (1962) 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70, 76.

Cases decided subsequent to *United States v. Wade* and *Johnson v. Zerbst* clearly establish that these strict standards also apply to invocation of a waiver of the right to have counsel present at certain pre-trial proceedings. In *Brewer v. Williams,* (1977) 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424, the United States Supreme Court discussed the question of waiver of the right to have counsel present during an interrogation. The Court explained that " * * * the proper standard to be applied in determining the question of waiver as a matter of federal constitutional law * * * (is whether) * * * the State [can] prove 'an intentional relinquishment or abandonment of a known right or privilege.' " 430 U.S. at 404, 97 S.Ct. at 1242, 51 L.Ed.2d at 439 (*quoting Johnson v. Zerbst, supra* ). The Court in *Brewer v. Williams* then pointed out that "[t]his strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pre-trial proceedings. *Schneckloth v. Bustamonte,* (1973) 412 U.S. 218, 238–40, 93 S.Ct. 2041, 2053–54, 36 L.Ed.2d 854, 869–70; *United States v. Wade,* (1967) 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149, 1163." *Id.,* 97 S.Ct. at 1242, 51 L.Ed.2d at 440.

In *Schneckloth v. Bustamonte, supra,* the accused argued that a "consent" to a search under the Fourth Amendment should be evaluated by the same standards used to

determine a "waiver" for Sixth Amendment purposes, under the doctrine of *Johnson v. Zerbst, supra.* In disposing of this argument, the Court explained that the waiver standards of *Johnson v. Zerbst,* " * * * were enunciated . . . in the context of a fair criminal trial." 412 U.S. at 235, 93 S.Ct. at 2052, 36 L.Ed.2d at 867. The Court further stated:

"The requirement of a 'knowing' and 'intelligent' waiver was articulated in a case involving the validity of a defendant's decision to forego a right constitutionally guaranteed to protect a fair trial and the reliability of the truth-determining process." *Id.* at 236, 92 S.Ct. at 2052, 36 L.Ed.2d at 868.

"Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Id.* at 237, 92 S.Ct. at 2053, 36 L.Ed.2d at 868.

"The guarantees afforded a criminal defendant at trial also protect him at certain stages before the actual trial, and any alleged waiver must meet the strict standard of an intentional relinquishment of a 'known' right. But the 'trial' guarantees that have been applied to the 'pretrial' stage of the criminal process are similarly designed to protect the fairness of the trial itself.

"Hence, in *United States v. Wade,* (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert v. California,* (1967) 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, the Court held 'that a post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth [and Fourteenth] Amendment right to counsel . . .' *Id.* at 272, 87 S.Ct. at 1956, 18 L.Ed.2d at 1186. Accordingly, the Court indicated that the standard of a knowing and intelligent waiver must be applied to test the waiver of counsel at such a lineup. See *United States v.*

*Wade, supra,* 388 U.S. at 237, 87 S.Ct. at 1937, 18 L.Ed.2d at 1163." Id. at 238–39, 93 S.Ct. at 2059, 36 L.Ed.2d at 869.

See *Shelton v. State,* (1979) Ind.App., 390 N.E.2d 1048, 1051. Thus, in light of United States Supreme Court pronouncements on the general question of waiver, we must evaluate the case before us in terms of whether or not the defendant knowingly, voluntarily and intelligently waived his right to have an attorney present at the lineup.

■■■ It is clear from the record that Defendant did not waive his right to counsel. Although, Officer Gillespie orally informed him that he was entitled to have an attorney present, he made no response. Gillespie did not ask whether he wanted to have an attorney present, whether he had an attorney, or whether he wished to contact an attorney. The State emphasizes that Defendant did not ask to have counsel present. However, as we noted above, "where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." *Carnley v. Cochran,* (1962) 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed.2d 70, 76. *See Brewer v. Williams,* (1977) 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 439. Likewise, a knowing, voluntary and intelligent waiver may not be inferred from a silent record. *Fitzgerald v. State,* (1970) 254 Ind. 39, 47, 257 N.E.2d 305, 311. *See Carnley v. Cochran, supra.* Therefore, we hold that the defendant did not waive his Sixth Amendment right to have an attorney present at the "lineup" proceedings.

■■■ It follows that the trial court erred when it admitted the testimony disclosing the "lineup" identifications. *Gilbert v. California, supra,* held that such evidence is *per se* inadmissible, saying:

"That testimony is the direct result of the illegal lineup 'come at by exploitation of [the primary] illegality.' (Citations omitted) The State is therefore not entitled to an opportunity to show that that testimony had an independent source. Only a per se exclusionary rule as to such testi-

mony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup." 388 U.S. at 272–73, 87 S.Ct. at 1956–57, 18 L.Ed.2d at 1186.

■ It has been urged that the error in admitting the evidence of the "lineup" identification was harmless, beyond a reasonable doubt, inasmuch as the witnesses also identified the defendant, in court, as one of the perpetrators of the crime and had sufficient bases for such identifications independent of the "lineup" identifications. Acknowledging, arguendo, that the in-court identifications were not tainted by the impropriety of the "lineup" procedures, the error cannot be regarded as being harmless.

In *Moore v. Illinois*, (1977) 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424, a rape victim had been permitted to testify at the trial of the accused that she had previously identified him at a preliminary hearing at which he had not been represented by counsel, counsel not having been offered. The trial judge permitted the testimony, notwithstanding the illegality of the pre-trial identification, because there existed an "independent source" for the identification at the uncounseled confrontation. The Supreme Court reversed the Court of Appeals and remanded for a determination of whether the admission of such evidence was harmless constitutional error under *Chapman v. California*, (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065. The court said:

"But *Gilbert* held that the prosecution cannot buttress its case-in-chief by introducing evidence of a pretrial confrontation made in violation of the accused's Sixth Amendment rights even if it can prove that the pretrial identification had an independent source. 'That testimony is the direct result of the illegal lineup (come at by exploitation of [the primary] illegality.)' (citing Gilbert), and the prosecution is 'therefore not entitled to an opportunity to show that the testimony had an independent source.' " 434 U.S. at 231, 98 S.Ct. at 466, 54 L.Ed.2d at 435–36.

We do not question that under given circumstances, such error might be deemed harmless under the *Chapman* criteria. However, such circumstances do not appear from this record. The conviction hinged upon the identification testimony of Doyle and Seybert. Although their in-court identifications may have been permissible, notwithstanding their exposure to the taint of the illegal "lineup" proceedings, it cannot be said that the additional evidence of their having previously identified the defendant at the "lineups" did not buttress their in-court identifications of him.

We have been liberal in the past in determining that in-court identifications had bases independent of improper pre-trial identification procedures that had a potential to taint. However, to use the "independent basis" test in an indiscriminate manner in every case as a criteria for finding error in admitting evidence of illegal identifications to be harmless, would be to permit the "exploitation of the primary illegality" and would obviate the requirement that identification procedures be kept free of state induced suggestivity. It simply cannot be said that the evidence of the "lineup" identifications did not buttress the witnesses' in-court identifications in this case. Obviously, the evidence was offered for that very purpose. To say that it did not impact upon the jury would be sheer speculation.

■ The State has also challenged the entitlement of a charged defendant to have counsel, as a matter of right, at "lineup" proceedings and argues that the proceedings were properly conducted, saying:

"What would be the function of counsel at a line-up? A defendant's right to counsel is not a mere academic right of companionship, but such counsel is expected to perform a beneficial function. If counsel had been present at the line-up, he could not have interfered in the proceedings in any way. He could not have objected to the display of Defendant by the police nor could he have advised Defendant that he did not have to get in the line. The evidence of the line-up shows that it was held properly and that

Defendant was identified without any suggestion or coercion by police."

It is noted that counsel for the State has said that the "evidence," not the "record," of the lineup shows no impropriety.

We do not find it reassuring that the *record before us* discloses no impropriety in the "lineup" procedures. To give weight to this would be to draw an inference from a silent record. The presence of counsel at identification proceedings serves two vital purposes. First, as pointed out in *United States v. Wade, supra,* if counsel is present he can serve both his client's interest and that of the prosecution by the prevention of suggestiveness.

Secondly, if such impropriety occurs, notwithstanding his presence, he can see that an appropriate record is made. We take *no* comfort that the record before us discloses no suggestiveness when that record is entirely dependent upon the correctness of the memories of those who urge the acceptance of the evidence, and there was no one present to record, remember or even to observe matters that might detract from its credibility.

Because of our holding upon this issue, we do not meet the defendant's challenges to the sufficiency of the evidence and the denial of his motion for a mistrial for an alleged failure of the State to disclose all witnesses.

The judgment is reversed, and the cause is remanded for a new trial.

DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C. J., concurs.

PIVARNIK, Justice, dissenting.

I dissent from the majority's conclusion that the admission of evidence concerning the uncounseled lineup was not harmless error. I agree that Hatcher was entitled to counsel at the lineup, that he did not waive his right to counsel, and, therefore, that evidence of that pretrial lineup identification should not have been admitted at trial. The majority, however, soft-pedals the

questions of "independent origin" and the relation of that issue to the question of harmless error. Thus, the majority has failed to properly complete the necessary analysis to be made in resolving this question, and, as a result, fails to elucidate the guidelines which trial courts and this Court must follow in future cases of this type. A full and proper analysis of the law and the facts of this case leads me to conclude that the error was harmless in nature.

After determining that evidence of the witnesses' lineup identification should not have been admitted, we must examine the nature of the witnesses' in-court identification. The purpose of conducting this analysis is clear: the witnesses also should not have been allowed to make an in-court identification of Hatcher unless those identifications had origins independent of the illegal lineup. *United States v. Wade,* (1967) 388 U.S. 226, 241–42, 87 S.Ct. 1926, 1939–40, 18 L.Ed.2d 1149, 1165–66; *Morgan v. State,* (1980) Ind., 400 N.E.2d 111, 113; *Love v. State,* (1977) 266 Ind. 577, 581, 365 N.E.2d 771, 773.

The factors to be considered in determining the existence of an independent basis may be divided into two sets: those dealing with the witness' opportunity to observe the offender, and those relating to the reliability of his recollection of his original observation of the offender. *Morgan v. State, supra; Love v. State, supra.* Specific factors in the first group include: the duration for which the observer can observe the perpetrator; the distance separating them; the lighting conditions; and circumstances affecting the amount of attention the witness can devote to observing the guilty party. *Parker v. State,* (1976) 265 Ind. 595, 599, 358 N.E.2d 110, 112. Factors in the second set include: the witness' prior opportunity to observe the alleged criminal act; the existence of any discrepancy between any pre-lineup description and the defendant's actual description; any pre-lineup identification of another person; the identification by picture of the defendant prior to the lineup; failure to identify the defendant on a prior occasion; and the lapse of time between the

alleged act and the lineup. *Swope v. State,* (1975) 263 Ind. 148, 157, 325 N.E.2d 193, 197, *quoting United States v. Wade, supra,* 388 U.S. at 241, 87 S.Ct. at 1940, 18 L.Ed.2d at 1165. "It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." *Id. See Morgan v. State, supra; Love v. State, supra.*

Concerning witness Sherrie Seybert in the case before us, the record reveals that she was unable to pick appellant's picture from the photographic display conducted prior to the lineup. However, the description she gave shortly after the crime to Officer Gillespie closely matched Hatcher's actual description. At no time did she misidentify another person. Moreover, only about six weeks elapsed between the commission of the crime and her identification of appellant in the lineup.

In addition, Seybert had a good opportunity to observe the perpetrators at the time this crime was committed. This robbery occurred in the middle of the afternoon, and appellant and his cohort were inside the restaurant for approximately five minutes. Seybert testified she had a clear view of appellant's face as he left the restaurant. Further, she engaged in a brief conversation with the two men before they pulled their guns and announced the robbery. Thus, in light of these facts, I believe there was sufficient evidence from which the trial court could determine that Seybert's identification of appellant had a basis independent of the illegal lineup. Therefore, in my view, the court did not err in admitting her in-court identification.

Witness George Doyle also had independent grounds for making an in-court identification of Hatcher. Like Seybert, Doyle was able to give a description of the perpetrators which matched Hatcher's description. Moreover, Doyle *did* identify Hatcher from the photographic display conducted prior to the lineup, and also he never failed to identify Hatcher on a prior occasion. He testified that Hatcher approached him in the back part of the restaurant and, at one point, their faces were only about one foot apart. Thus, Doyle had an even greater opportunity than Seybert to observe the perpetrator during the robbery. Therefore, I think the trial court did not err in allowing Doyle to make an in-court identification of Hatcher. *See Johnson v. State,* (1972) 257 Ind. 682, 278 N.E.2d 577.

The majority opinion apparently accepts in a limited sense the proposition that the in-court identifications of Hatcher by Seybert and Doyle had an independent origin and were not the product of the uncounseled lineup. However, the majority then attempts to compare this case to *Moore v. Illinois,* (1977) 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424. The *Moore* case has no bearing on the issue of the independent basis of the witnesses' *in-court* identifications. The United States Supreme Court stated in *Moore:*

> "[T]he prosecution cannot buttress its case-in-chief by introducing evidence of a *pretrial* confrontation made in violation of the accused's Sixth Amendment rights even if it can prove that the *pretrial* identification had an independent source."

*Id.* at 231, 98 S.Ct. at 466, 54 L.Ed.2d at 435–36, *citing Gilbert v. California,* (1967) 388 U.S. 263, 273, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178, 1186 (emphasis added).

Thus, without question, the per se exclusionary rule of *Gilbert v. California,* as applied by *Moore v. Illinois,* operates in this case to render inadmissible evidence of the witnesses' *pretrial* lineup identification. However, at this stage of the analysis, we are past that point; accepting that conclusion, we should be focusing on whether the *in-court* identification had an independent origin, and, if so, whether the trial court's error in admitting evidence of the *lineup* identification was harmless beyond a reasonable doubt. Therefore, *Moore v. Illinois* addresses an entirely different issue, and should not be used to confuse or suspend our analysis of the *in-court* identification evidence.

My assessment of the facts of this case, as set out above, leads me to conclude—and the majority appears to agree—that the

witnesses' in-court identifications had origins independent of the uncounseled lineup. Therefore, in my view, the trial court did not err in admitting the victims' in-court identification on testimony. We must next determine whether the admission of the improper evidence was harmless beyond a reasonable doubt. Clearly, the United States Supreme Court has contemplated and even required the application of the harmless error doctrine to cases of this exact type. *Moore v. Illinois*, (1977) 434 U.S. 220, 226, 98 S.Ct. 458, 463, 54 L.Ed.2d 424, 436; *Gilbert v. California*, (1967) 388 U.S. 263, 274, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178, 1187; *United States v. Wade,* (1967) 388 U.S. 226, 242, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1166.

The majority seems to be ill at ease with the idea that the victims' positive in-court identifications could help render the error in question harmless. In my view, the strength of these identifications—and the clearly independent bases for them—are crucial to a proper solution of the harmless error question. It is illogical and unfair to recognize the admissibility of the witness' in-court identifications, and, hence, their independent origins, but then to refuse to consider those identifications in deciding whether the error as to the *lineup* testimony was harmless. The majority asserts that, to permit such an analysis "would be to permit the 'exploitation of the primary illegality' and would obviate the requirement that identification procedures be kept free of state-induced suggestivity." However, to *refuse* in all cases to consider the in-court identification in applying the harmless error rule would, for purposes of our review, completely undercut the finding that the in-court identification was admissible. I do not believe the exclusionary rule of *Gilbert v. California* and the harmless error rule logically or legally require this approach. In fact, such an approach would, in many cases, probably frustrate and twist the otherwise completely proper application of the harmless error rule.

The two victims here, Doyle and Seybert, both unequivocally identified Hatcher at trial as one of the perpetrators of the robbery. In addition, Doyle picked Hatcher's picture from a photographic display which was conducted before the illegal lineup. Evidence of Doyle's selection was also presented to the jury. Also, as noted above, the circumstances surrounding the crime, including the witnesses' close visual contact with Hatcher, unquestionably made their in-court identifications of him very convincing. Moreover, there was no evidence presented to the jury that either Seybert or Doyle ever misidentified another person as the perpetrator, nor that Doyle ever *failed* to identify Hatcher on a prior occasion. In addition, both witnesses' initial description of one of the perpetrators closely matched Hatcher's actual description. All of these facts, which were fully available for the jury's consideration, lead me to conclude that the admission of evidence of the uncounseled lineup could not have affected the jury's verdict. The testimony regarding the victims' pretrial identifications added little to their positive identifications at trial. *See United States ex rel. Moore v. Illinois*, (7th Cir. 1978) 577 F.2d 411 (*on remand from* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424), *cert. denied*, (1979) 440 U.S. 919, 99 S.Ct. 1242, 59 L.Ed.2d 471.

Finally, the majority has chosen to remand this case for a new trial. At that new trial, evidence of the uncounseled lineup identification will clearly not be admissible. The question remains, however, as to whether the victims will be permitted to make an in-court identification. That question, of course, turns on whether their identifications have independent origins. The majority, at two points, *assumes* for the sake of argument that such origins exist. However, the majority, in fact never directly applies the appropriate guidelines and *decides* this question. I think this Court should give some guidance to the parties and the trial court concerning this important question, because, judging from the record before us, a finding that the in-court identifications were also improper might, as a practical matter, determine for the prosecutor whether he will pursue this case further. In addition, I also believe the majori-

ty should address the issue of the State's alleged failure to disclose all witnesses. Whatever merit this issue has now, it will also have upon retrial and on any subsequent appeal.

I would hold that the admission of evidence of the uncounseled lineup was, in this case, harmless error, and would therefore proceed to consider the other issues raised on this appeal.

GIVAN, C. J., concurs.