**John A. BRAFFORD, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1085 S 435.**

Supreme Court of Indiana.

Dec. 16, 1987.

William A. Goebel, Crawfordsville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal arising from a jury trial. Appellant was convicted of the crimes of burglary and attempted theft and was also determined to be an habitual offender. He was sentenced to 20 years for burglary, with that sentence enhanced by 30 years due to the habitual offender finding, and to 4 years for attempted theft.

There are six issues before us for review: (1) whether the trial court erred in denying a motion for mistrial and a request for an admonishment; (2) whether appellant was denied his right to cross-examine witnesses; (3) whether the trial court erred in permitting the State to introduce subpoenas issued for appellant's brother and sister; (4) whether the trial court erred by not suppressing identification testimony; (5) whether State's Exhibit # 3 was erroneously admitted; and (6) whether the combination of the above alleged errors requires reversal of appellant's conviction.

These are the facts from the record which tend to support the determination of guilt: On September 22, 1984, at approximately 4:45 a.m., Robert Ostermeier observed appellant in the Ostermeier kitchen going through Mrs. Ostermeier's purse. When appellant saw Ostermeier, he fled. Police arrested appellant a short while later and he was taken to the police station where Ostermeier positively identified appellant as the man he observed in his kitchen.

I

Appellant was granted a motion in limine preventing the State from addressing appellant's prior criminal history. Detective Yeager, the State's first witness, testified that he asked appellant about his whereabouts in the early morning hours of September 22, 1984, and that appellant replied he had arrived home at approximately 3:30 a.m. After police confronted him with the fact he had been observed returning home and entering the house at 6:00 a.m., Yeager testified that appellant said "What would you say if you were in my shoes and you had a past record and you were in my shoes?" Defense counsel immediately objected to the insertion of appellant's prior record in violation of the motion in limine. The trial court ruled that while the remark attributed to appellant was a technical violation of the motion in limine, it was nevertheless admissible.

This statement has a dual character. It tended to establish that appellant was in fact the person seen arriving at the house at 6:00 a.m., and was therefore relevant. It also constituted a denial by appellant of guilt in the charged crime. While the general rule is that evidence of prior crimes unrelated to the present offense is inadmissible to prove guilt of the crime charged, when that evidence is inseparable from other relevant and admissible evidence the proper test of admissibility must necessarily include the balancing of the probative value of the evidence against the prejudicial impact of its admission. The reference by appellant to a "past record" is not so damaging as to outweigh the probative value of the evidence. While it does indicate this may not be the first time appellant has been accused of a crime it also

serves as a denial of his guilt. We agree with the trial court that the statement itself was admissible as relevant evidence and that the vague mention, by appellant himself, of a prior record did not negate the admissibility of the statement.

## II

Appellant asserts that the trial court erroneously prevented him from delving into certain areas in cross-examination. He relates two specific instances where he felt he was prejudiced by not being permitted to explore a line of questioning.

### A.

On the date in question, police had instituted a course of operation whereby if a burglary occurred officers would proceed to one of three addresses they believed appellant might be staying and would then observe the residences. This plan of action was instituted after a confidential informant indicated appellant was responsible for a series of burglaries in Crawfordsville. When appellant attempted to learn the identity of the confidential informant, the trial court sustained the State's objections.

Appellant admits that the existence of the confidential informant and the existence of the stake-out at his residence were brought out by the defense. However, he contends this was necessary since the State left a misleading impression that police coincidentally observed appellant, who matched the description given by Ostermeier, entering his residence in the early morning hours following the burglary.

■ The general policy in Indiana is to prevent disclosure of the identity of a confidential informant, unless the defense can prove the necessity of such a disclosure. *Powers v. State* (1982), Ind., 440 N.E.2d 1096. *Ryan v. State* (1982), Ind., 431 N.E. 2d 115. The defense has the burden of proving that disclosure is relevant and helpful to the defense or is necessary to a fair trial. *Lewandowski v. State* (1979), 271 Ind. 4, 389 N.E.2d 706. Appellant contends that the identity of the informant, which led police to suspect appellant, was necessary to his defense.

■ Appellant has not met his burden to show the relevance or necessity of this information. Appellant was arrested pursuant to a valid warrant unconnected to this case. The observation of the residence and appellant's arrival was not unlawful. The State quite properly did not itself bring out the existence of the confidential informant or the fact that appellant was a suspect in numerous burglaries. The defense adopted this tactic and then complained that withholding the identity prejudiced him. We fail to see how the identity of the confidential informant was necessary to appellant's defense. The only evidence presented even connected to the existence of a confidential informant was the fact appellant arrived home in the early morning following the burglary of Ostermeier's residence. We do agree that appellant was put in a negative light by the suggestion he was a suspect in previous burglaries. However, this subject was raised by the defense and we will not punish the State for the fairness it displayed in not itself attempting to exploit its potential benefit.

### B

Appellant also asserts the trial court erred by preventing him from questioning police as to whether appellant was handcuffed when Ostermeier identified him and from questioning police concerning their use of a dog.

■ In relation to the question involving whether or not appellant was handcuffed at the time of identification, the question which the State successfully challenged was whether the officer had heard appellant testify at an earlier hearing that he had been handcuffed. This question was designed to elicit a self-serving hearsay declaration, not subject to cross-examination, and defendants will not be permitted to enhance their own credibility by using self-serving out-of-court declarations. *Hernandez v. State* (1982), Ind., 439 N.E.2d 625. *Cain v. State* (1973), 261 Ind. 41, 300 N.E.2d 89. The trial court was correct in sustaining the State's objection to this question.

As for the examination of the use by police of a dog, the only testimony on direct examination was that an officer arrived in a canine unit. Appellant apparently sought to ascertain whether or not the dog had been used to follow a scent from Ostermeier's house and whether the shirt recovered from appellant's house was offered to the dog. The trial judge was correct in limiting this line of questioning. It has long been held in Indiana that tracking dog or "bloodhound evidence" is not sufficiently reliable to be admitted into evidence. *Ruse v. State* (1917), 186 Ind. 237, 115 N.E. 778.

### III

The State, through Officer Russell, entered Exhibits #7 and #8 into evidence over appellant's objection. The exhibits consisted of subpoenas for the appearance of appellant's brother and sister. Officer Russell testified he had been handed the subpoenas three hours earlier and had been unable to locate either appellant's sister or his brother as both were on vacation. Appellant objected and requested a mistrial. On appeal, he argues that the sole purpose of this evidence was to infer to the jury that appellant had ordered his brother and sister to be out of town so that they would be unable to testify for the State. He also urges this testimony was rebuttal and could not be presented in the State's case-in-chief.

This evidence was relevant and therefore admissible. During the cross-examination of State's witnesses, the defense had questioned whether appellant's brother was present at the house when appellant was arrested. Officers were also asked to describe the appearance of appellant's brother. The defense was clearly trying to raise the inference that appellant's brother might have been the responsible party. Appellant's sister could also have revealed if her brother Mike was present in the house and could have possibly clarified the ownership of the green shirt linked to appellant. The State had named the brother and sister on its witness list and was entitled to call them at trial. Given the turn of appellant's questions on cross-examination, the fact the State attempted to locate each was relevant.

It was also appropriate to present this testimony during the State's case-in-chief. Strict rebuttal evidence is presented after the defense has rested, and affords the State an opportunity to counteract testimony presented by the defense; however, countering evidence is possible at other times. Here, the State was countering an inference which the defense sought to raise when cross-examining State witnesses. It was properly permitted to do so during the case-in-chief.

### IV

Ostermeier identified appellant in a one-on-one show-up at the police station. While we acknowledge that one-on-one confrontations are inherently suggestive, such confrontations are not *per se* improper. *Hill v. State* (1982), Ind., 442 N.E.2d 1049. An improper pre-trial identification does not prevent in-court identification as long as there is a sufficient independent basis for the in-court identification. *Remsen v. State* (1981), Ind., 428 N.E.2d 241.

The factors considered are the witness's opportunity to view the criminal when the crime was committed, the degree of attention at the time, the accuracy of the prior description, the level of certainty in pre-trial identification and the length of time between the crime and the identification. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

Reverend Ostermeier suspected someone was in his house and went toward the kitchen where the light was on. He observed appellant standing directly under the kitchen light for several seconds. His description of the intruder closely matched that of appellant and he positively identified appellant two hours after the crime. This evidence shows that there was a sufficient independent basis for the in-court identification untainted by the improper pre-trial show-up.

### V

A green shirt, which was found draped over the back of a chair in appellant's

house and which matched the description given by Ostermeier, was admitted into evidence over appellant's objection that no proper chain of custody had been established and that no evidence identifying the shirt as belonging to appellant had been presented.

The purpose of the chain of custody requirement is to provide reasonable assurance that the exhibit has not been substituted or tampered with. *Holt v. State* (1980), 272 Ind. 544, 400 N.E.2d 130. While the State is not required to exclude every possibility of tampering, the chain of custody must give reasonable assurance that the property passed through the hands of the parties in an undisturbed condition. *Gorman v. State* (1984), Ind., 463 N.E.2d 254. Here the shirt was non-fungible and readily identifiable. The State established it was the same shirt in the same condition as when recovered from appellant's house and that it was placed in a bag in the police property room at all times except when transported to court. This chain of custody was sufficient.

Appellant also asserts there was no evidence identifying the shirt as belonging to him. The State showed that appellant was seen in a green shirt shortly after the crime, had access to this shirt, and was found shirtless when he was arrested. This evidence was relevant and admissible. It was not necessary for the State to establish ownership of the shirt. Rather, the inference that appellant had been wearing the shirt was sufficient.

### VI

Appellant urges that we consider the cumulative effect of the previously alleged errors and grant him a new trial. Since we determined that the issues identified as error by appellant were not such, we do not find any cumulative effect upon the verdict of the jury.

The convictions are affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.