Donald Eugene
DAVENPORT, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8710–CR–969.

Supreme Court of Indiana.

March 20, 1989.
Rehearing Denied June 12, 1989.

Kenneth T. Roberts, Roberts & Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Conspiracy to Commit Robbery, a Class C felony. He also was found to be an habitual offender, for which his five (5) year robbery sentence was enhanced by thirty (30) years for an executed sentence of thirty-five (35) years.

The facts are: On the evening of August 29, 1986, Steve Molden was at home in his second floor apartment two houses down from the Waffle House restaurant located at the intersection of Madison and Troy Avenues in Indianapolis. When at 9:00 p.m. he heard a car's loud exhaust, he looked out his living room window and observed two men pull up in a car. The passenger exited, was gone for a moment, then returned, and the car was driven away.

Around 11:00 p.m., when Molden again heard the car pull up, he saw it being parked next to his personal and business vehicles. Concerned with their security, Molden went outside and watched the loud car's occupants from behind his own van parked about ten feet away. Molden observed two men exit the light blue 1974 Dodge Dart Swinger and leave the engine running. As Molden watched, they tied bandannas over their lower faces and walked down the alley toward the Waffle House. One of the men carried a large handgun.

As they approached the restaurant, two employees, Anne Campbell and Ron Syra, were leaving at the end of their shift. They spotted the two men wearing bandannas lurking in the shadows of the building next door, then returned inside the Waffle House and alerted the night shift manager. All three went outside in time to see the two men enter their car and leave abruptly. Molden, meanwhile, had watched the two men, cursing in exasperation, come running back to their car. The Waffle House staff alerted the police, who broadcast a radio dispatch describing the Dodge.

About twenty minutes after hearing the dispatch, Indianapolis Police Officer Terry Eden was proceeding northbound on State Avenue when he spotted the blue Dodge southbound on the same street. Activating his red overhead lights, Officer Eden turned around in the street and proceeded through traffic to catch up with appellant's car. That vehicle had pulled off State Avenue onto a side street; when Officer Eden reached it, he found it stopped in the street with the engine running, the driver's door standing open and the occupants gone. He then observed appellant running away across lawns and between houses.

Officer Eden requested backup units via radio. When they arrived, a canine unit tracked appellant's scent from the Dodge to the rear of a house where appellant was found hiding beneath a pickup truck. A pellet gun, made as a replica of a .357 magnum revolver, was found a few feet away. In the abandoned Dodge they found a loaded .22 caliber automatic pistol, four bandannas, and various documents pertaining to the car's owner, Larry England.

A couple of days later, Steve Molden positively identified appellant from a photographic array as one of the men he had observed on the night in question. He also positively identified the 1974 blue Dodge impounded by police as the same one used by the two men that night.

Appellant contends the evidence is insufficient to support the jury's verdict of guilty of conspiracy to commit robbery. He argues the State failed to establish the existence of an agreement to rob the Waffle House, because no reasonable inference of criminal purpose could be drawn from his conduct as observed near the restaurant that night. He maintains the circumstantial evidence here rises only to the level of speculation, mostly because the two men never actually set foot on Waffle House property.

■ Indiana Code § 35-41-5-2 requires two elements be proven to sustain a conviction for conspiracy: 1) an agreement between two or more persons to commit a felony, and 2) performance by one of those persons of an overt act in furtherance of the agreement.

Our decisions have held that such an agreement need not be proven by direct evidence of a formal agreement. *Survance v. State* (1984), Ind., 465 N.E.2d 1076. It may be inferred from the conduct of the parties or proved by circumstantial evidence alone. *Smith v. State* (1987), Ind., 516 N.E.2d 1055; *Isom v. State* (1986), Ind., 501 N.E.2d 1074. We have also held that flight may be considered as circumstantial evidence of a consciousness

of guilt. *Jones v. State* (1985), Ind., 485 N.E.2d 627. Proof of an agreement to commit a felony is not limited to direct evidence of overt acts performed in furtherance of the agreement.

Here, even if we assume for argument's sake that, standing alone, appellant's conduct in the vicinity of the Waffle House bespeaks equivocally at most of an apparent criminal purpose, his subsequent conduct of fleeing police, abandoning the Dodge in which were found bandannas and a handgun, and hiding under a truck after apparently discarding a pellet pistol clearly leads to a solid inference that an agreement had in fact existed to commit a robbery.

The evidence is sufficient to support appellant's conspiracy conviction.

■ Appellant contends the trial court erred in denying his motion to suppress, and in admitting over his objection at trial, identification evidence from a live line-up conducted in the absence of counsel. A week after appellant's arrest, the State filed a motion for line-up to take place that evening. The motion was granted, and appellant's counsel was notified of the line-up three hours before its scheduled time. Counsel informed the State that his physician wife was on call that evening and he had to care for their three children; thus, he could not attend. He then requested the line-up not proceed in his absence.

As the State concedes, identification evidence from an uncounseled line-up held after the right to counsel has attached is inadmissible without a valid, knowing waiver by the accused. *Hatcher v. State* (1981), 275 Ind. 49, 414 N.E.2d 561. An improper pretrial identification procedure also taints a subsequent in-court identification unless sufficient independent basis exists for the latter. *Brafford v. State* (1987), Ind., 516 N.E.2d 45. However, the erroneous admission even of evidence of an improper pretrial identification may be rendered harmless beyond a reasonable doubt by the existence of an independent basis for the witness' identification of the accused. *Parsons v. State* (1985), Ind., 472 N.E.2d 915,

*cert. denied,* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857.

In the instant case, prior to identifying appellant during the uncounseled live line-up, witness Molden picked appellant out of a photographic array of eight pictures. Appellant argues this array was not a sufficient independent basis because it was impermissibly suggestive in that the witness was informed a suspect was in custody, and appellant was the only person depicted whose posture suggested his hands were cuffed behind his back. In light of the fact most of the other photographs were obviously jail mug shots, we find this objection unconvincing.

Moreover, prior to the photographic array, on the night in question Molden observed appellant for approximately thirty seconds from his upstairs window, then later for twenty to thirty seconds from behind his van about ten feet away from appellant. The photographic identification, coupled with Molden's observations of appellant on the night of his arrest, provide ample independent basis for his in-court identification. We further note that appellant was not arrested in reliance upon this witness' identification but rather was apprehended while fleeing from police.

Under these circumstances, the erroneous admission of the uncounseled line-up identification was harmless beyond a reasonable doubt.

■ Appellant contends the jury's verdict of guilty of conspiracy to commit Class C felony robbery is void, as the information charged him only with conspiracy to commit Class B felony robbery, and no instructions were given to the jury concerning any lesser offenses. Appellant was charged with conspiracy as a Class B felony pursuant to Ind.Code § 35–42–5–1 as he was alleged to have carried a handgun during commission of the crime. He was also charged with Carrying a Handgun Without a License, of which he was found not guilty.

The trial court instructed the jury as to the respective elements of conspiracy and robbery using language closely tracking the statute, which provides that robbery, a

Class C felony, is elevated to Class B felony status if committed while armed with a deadly weapon. Having found the evidence did not warrant a conviction for possessing a handgun, the jury, presumably in order to render consistent verdicts, sent notes to the trial court asking, "Do we have the option of returning a verdict dealing with a Class C felony?" and "Can we alter this document [verdict form] to reflect a change to a Class C felony or have another document prepared with Class B changed to Class C?"

The court responded with a note reading, "The jury is the finder of the law and the evidence." The jury then found appellant guilty of conspiracy to commit robbery, a Class C felony.

Appellant reasons that because the State can foreclose the defendant from obtaining an instruction on a lesser included offense by careful drafting of the charging instrument, citing *Jones v. State* (1982), Ind., 438 N.E.2d 972, the jury here was foreclosed from returning a verdict on a lesser offense as none was charged and no instructions were given concerning lesser included offenses. It is true that the charging instrument must give the defendant notice of the offense charged, so that conviction of a lesser included offense is barred unless the instrument alleges all the essential elements of the lesser offense. *Peek v. State* (1983), Ind.App., 454 N.E.2d 450.

Here, however, robbery as a Class C felony is an inherently included offense of robbery as a Class B felony in that it is impossible to commit the greater offense without first having committed the lesser. *Zachary v. State* (1984), Ind., 469 N.E.2d 744. Proof of the element of commission while armed with a deadly weapon is all that distinguishes the greater from the lesser; thus, appellant had notice of all elements constituting the lesser offense found in the verdict and was not prejudiced by any lack of notice. As the lesser offense was inherently included in the charging instrument, so was it included in the jury's instruction as referred to above.

We agree with the trial court's conclusion that it was within the purview of the jury to return a verdict of guilty of conspiracy to commit a Class C felony.

■ Appellant contends the trial court erred in giving over his objections Final Instructions Nos. 16 and 17. No. 16 states:

"Conspiracy is a criminal agreement of two or more persons, the object of which is the commission of a felony. It is not required that a felony actually be committed or even be attempted."

No. 17 instructed the jury as follows:

"A conspiracy entails an intelligent and deliberate agreement between the parties. It is not necessary, however, to present direct evidence of a formal express agreement. The agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act."

Appellant argues, in essence, that these instructions distort the law in such a way as to favor a finding of guilty of conspiracy by causing the jury to reach for "extraneous" evidence.

Appellant's contention is clearly without merit. Instruction 16 is a correct statement of the law concerning conspiracy. *Taylor v. State* (1981), Ind., 425 N.E.2d 141. Instruction 17 is likewise an accurate statement of the law regarding the inference of intent from circumstantial evidence. *Survance, supra.*

It was not error to give Final Instructions Nos. 16 and 17 to the jury.

■ Appellant contends the habitual offender finding is defective because the verdict forms used for the habitual phase required the jury to return a special verdict via interrogatories. The State alleged appellant had accumulated felony convictions in 1968, 1976, and 1983. The verdict form used set out each felony conviction alleged and required the jury to find whether it had or had not been proven by the State, along with whether they found he had accumulated two or more prior convictions and whether he was an habitual offender.

Appellant maintains that since special verdicts and interrogatories have been abolished in most cases by Ind.R.Tr.P. 49, the verdict forms used here amount to reversible error by impinging upon the jury's responsibility under art. I, § 19 of the Indiana Constitution to be the finder of the law and the facts.

However, as our prior cases hold, such verdict forms when used in habitual offender proceedings do not violate Rule 49. Moreover, they do not impede but rather facilitate the jury's findings of whether the defendant has accumulated two prior unrelated felonies. *Criss v. State* (1987), Ind., 512 N.E.2d 858. We note also that any error with regard to the verdict form was waived by appellant's failure to object to the form at trial. *McCraney v. State* (1981), Ind., 425 N.E.2d 151.

Use of the verdict form was not error.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Justice, dissenting.

The majority reasons that the State's identification witness, Molden, had had a good opportunity to observe the two would-be robbers, and that his observations of them on the night in question provided an "ample independent basis for his in-court identification," which provided in turn a proper basis upon which this Court might declare that the error in admitting evidence of Molden's lineup identification was harmless error beyond a reasonable doubt. When the prosecution succeeds in presenting evidence of a pretrial identification made in violation of the accused's Sixth Amendment rights during its case-in-chief at trial, as was accomplished at this trial, it has successfully exploited the primary illegality and is prohibited from enjoying the benefit of that exploitation by showing that the evidence had an independent source. *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Hatcher v. State* (1981), 275 Ind. 49, 414 N.E.2d 561. (Pivarnik, J., dissenting). The most stringent standards of harmless constitutional error apply when, as here, one of the most basic constitutional rights, the right to counsel, has been violated. In order to affirm this conviction, this Court must declare a belief that the evidence of the pretrial identification did not influence the jury in arriving at its verdict of guilty. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Here, the witness observed the men, first at a distance and then for several minutes from behind a vehicle in a parking lot. The two men had their faces partially covered for some of these minutes. The witness did not see facial hair, whereas appellant had a moustache. He was unable to pick appellant out of a second lineup. There was no immediate chase of the vehicle, but it was picked up some time later. I am unable to declare a belief that the jury was not comforted by the evidence of appellant's selection by the witness from a lineup of several persons, in achieving that moral certainty beyond a reasonable doubt of guilt. I would therefore reverse and remand for a new trial at which the evidence of the pretrial identification at the lineup would be excluded.

DICKSON, J., concurs.