GEORGE W. BROTT v. STATE OF NEBRASKA.

FILED DECEMBER 2, 1903. No. 13,325.

Burglary: EVIDENCE. The conduct and behavier of bloodhounds, after being set upon the trail of a fugitive criminal, may not be given in evidence by the state, for the purpose of proving that the scent of the accused and the scent of the person who perpetrated the crime which is being investigated are identical.

ERROR to the district court for Nemaha county: JOHN S. STULL, JUDGE. Reversed.

H. A. Lambert and J. S. McCarty, for plaintiff in error.

Frank N. Prout, Attorney General, and Norris Brown, for the state.

SULLIVAN, C. J.

George W. Brott was charged with burglary and convicted. The court received as evidence of guilt the fact that bloodhounds, after being taken to the place where the

crime was committed, appeared to trail the burglar to defendant's house. The competency of this evidence is the only question necessary to consider in disposing of the case. The conduct of the dogs was, perhaps, rightly received, in connection with an admission made by Brott, as evidence tending to prove that he committed the crime charged in the information; but it was also received as proof of independent crimes which the state brought to the attention of the jury, to which the admission did not relate. The only evidence of these independent crimes was the inference afforded by the conduct of the dogs. If such evidence is incompetent the conviction can not stand. The argument of the attorney general is that the bloodhound has an exceptionally fine perception of scent; that, in following a trail and discriminating between smells, he seldom or never errs; and that knowledge of his extraordinary aptitude is so nearly universal that courts will act upon it without proof. The bloodhound has, of course, a great reputation for sagacity, and there is a prevalent belief that, in the pursuit and discovery of fugitive criminals, he is practically infallible. It is a commonly accepted notion that he will start from the place where a crime has been committed, follow for miles the track upon which he has been set, find the culprit, confront him, and, *mirabile dictu,* by accusing bay and mien, declare, "Thou art the man." This strange misbelief is with some people apparently incorrigible. It is a delusion which abundant actual experience has failed to dissipate. It lives on from generation to generation. It has still the attractiveness of a fresh creation. "Time writes no wrinkle on its brow." But it is, nevertheless, a delusion, an evident and obvious delusion. The sleuthhound of fiction is a marvelous dog, but we find nothing quite like him in real life. We repudiate utterly the suggestion that there is any common knowledge of the bloodhound's capacity for trailing, which would justify us in accepting his conclusions as trustworthy under circumstances like those disclosed by the present record. The burglary was committed on the morning of

Brott v. State.

July 5, before daylight.  The trailing did not commence until about five in the afternoon.  In the meantime the trail, near the scene of the crime, had been walked over, closely paralleled, and crossed, directly and obliquely, per- haps, a hundred times.  And the sun had been shining on it steadily for more than twelve hours.  The situation the dogs had to deal with was an exceptionally difficult one, and it was, we think, reversible error to accept their con- clusion as legal evidence of defendant's guilt.  To get a nearer and clearer view of the nature of the evidence er- roneously admitted, let us consider closely what trailing is.  The path of every human being through the world, at every step, from the cradle to the grave, is strewn with the putrescent excretions of his body.  This waste matter is in process of decomposition; it is being resolved into its constituent elements and its power to make an impression on the olfactory nerves of a dog or other animal becomes fainter and fainter with lapse of time.  Under favorable conditions, such as free exposure to air and sun, every compound particle is rapidly separated into its original parts and, when the dissolution is complete, its character- istic scent is gone.  The bloodhound is endowed with a remarkably keen scent.  He has great ability for differen- tiating smells.  His method of trailing is simple and well understood.  Particles of waste matter given off by a particular individual fall to the ground and, while under- going chemical change, come in contact with the olfactory nerves of the dog, and produce an impression which he is able to recognize, as distinct and different from all other impressions.  Hence, for a short time, a man may be easily trailed in the woods, or in the open country, by the effluvia in his wake.  But in a city, and after the lapse of con- siderable time, the trailing is obviously more difficult and often, manifestly, impossible.  But difficulties do not deter the bloodhound from pursuing his business.  He trails as best he can.  He always follows some scent, and he goes somewhere.  Undoubtedly, nice and delicate questions are time and again presented to him for decision.  But the con-

Brott v. State.

siderations that induce him, in a particular case, to adopt
one conclusion rather than another can not go to the jury.
The jury can not know whether the reasons on which he
acted were good or bad, whether they were all on one side
or evenly balanced, or whether his faith in the identity of
the scent which he followed was strong or weak.  In at-
tempting to separate one smell from ten, twenty, fifty or
a hundred similar smells with which it is intermixed and
commingled, it is highly probable, if not quite certain, that
the bloodhound undertakes a task altogether beyond his
capacity.  Like other dogs, he has his limitations and they
must be recognized in courts of justice, if not elsewhere.
That the conclusions of the bloodhound are, generally, too
unreliable to be accepted as evidence in either civil or
criminal cases, is, we believe, the teaching of that common
knowledge and ordinary experience which we may right-
fully bring to the examination of this subject.  If such
evidence were held to be legal evidence, it would, standing
alone, sustain a conviction, and courts in this golden age
of enlightenment, would now and again be under the hu-
miliating necessity of adjudging that some citizen be de-
prived of his property, his liberty, or his life, because,
forsooth, within twenty-four or forty hours after the com-
mission of a crime, a certain dog indicated by his conduct
that he believed the scent of some microscopic particles,
supposed to have been dropped by the perpetrator of the
crime, was identical, or closely resembled, the scent of the
person who had been accused and put upon trial.  There
are, we know, some cases in this country which hold that
this kind of evidence is competent, but, it seems, the ju-
dicial history of the civilized world is against them.  The
bloodhound is, we admit, frequently right in his conclu-
sions, but that he is as frequently wrong, is a fact well
attested by experience.  What he does in trailing, may be
regarded as the declaration of a disinterested party, but,
so regarded, the authorities are opposed to its admission.
It is unsafe evidence, and both reason and instinct con-
demn it.

The judgment is reversed, and the cause remanded for further proceedings.

REVERSED.