## Commonwealth *v.* Hoffman, Appellant.

*Criminal law—Evidence—Trailing by bloodhound—Identification of prisoner.*

1. On the trial of an indictment for arson, the commonwealth may be permitted to show that about one hour and a half after the fire was discovered a female bloodhound of pure strain and breeding, about five years old, was brought to the scene of the crime and taken to a point as near to the burning building as the heat would permit, and at a place from which all persons had been excluded, and where there was reason to believe from surrounding circumstances that the felon had been when the fire started; that the bloodhound there took up a trail or scent, and followed it by tortuous windings for a considerable distance, when the dog met the defendant in the line of the trail she was following, smelled at him, and quit working by manifesting the usual signs that she had successfully run down the object of the search; that the dog had been carefully trained by persons skilled in such work, to follow human tracks, and that in at least 100 tests she was found to run true to scent, and had never failed to locate the object of her pursuit; and that the person who had her in charge had owned her for over two years, and had frequently tried her out so as to be competent to manage her in securing an initial scent, and following its trail.

2. Such evidence is permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime with which he is accused.

Argued May 13, 1912. Appeal, No. 3, April T., 1912, by defendant, from judgment of O. and T. Venango Co., August T., 1911, No. 3, on verdict of guilty in case of Commonwealth v. W. J. Hoffman. Before RICE, P. J.,

HENDERSON MORRISON, ORLADY, HEAD and PORTER, JJ.
Affirmed.

Indictment for arson.  Before CRISWELL, P. J.

At the trial it appeared that William J. Hoffman was
indicted as an accessory before the fact to the burning
of a barn belonging to his brother, Louis Hoffman.  There
was evidence to the effect that the defendant had en-
couraged and instigated one Lowrey Hoffman to burn
the barn.  There was also evidence that the defendant
had been seen in the neighborhood on the evening of the
fire.

When Carlisle Hoffman, a witness for the commonwealth
was on the stand, the following offer was made:

Mr. Breene: The commonwealth offers to prove by this
witness and other witnesses that upon the occasion referred
to a bloodhound was procured and brought to the scene of
the fire about half past eleven and within about an hour
after the beginning of the fire.  That the hound was placed
within forty or fifty feet of the eastern side of the barn
and as near to the barn as she could be placed by reason
of the excessive heat.  That the hound, then being in
charge of its owner, Mr. Gregg, was laid upon the ground
and took the track or trail at a point about fifty feet
easterly from said barn and followed said track easterly
some short distance to a rail fence and therefrom fol-
lowed said track northerly and along said fence to the
Bottom road, crossing the same, and from this point in
a northwesterly direction of the defendant's lane and to a
point near his house.  That the hound upon reaching
the premises of the defendant and while still upon and
following said track encountered the defendant, smelled
him, jumped upon him and manifested the same indica-
tions that the hound usually did when running and suc-
cessfully locating the object of pursuit.  That the hound
followed said track, which was at intervals marked by
the footsteps of a man recently made.  That said hound
was a bloodhound of pure blood and pedigree, in the

neighborhood of four or five years of age, having been thoroughly trained to track and follow human footsteps, and having prior to this time been subjected to a great many severe tests and without failure, and that upon this particular occasion the hound was in charge of an experienced party for said purpose, and that the hound prior to this occasion had been trained for said purposes and found to be successful and reliable by an experienced person.  This offer to be followed by evidence showing the presence of the defendant within a short distance of the barn burned immediately before the fire, and also by evidence showing that the defendant shortly before the fire left his home, and immediately after the fire was seen approaching his home in an excited, hasty manner, and when so seen was making substantially the same trail or track followed by said hound.

Mr. Weigle: The offer is objected to as incompetent.

Mr. Blair: We make the further objection that there is no evidence that this dog was a bloodhound at this time.

The Court: The objection is overruled for the present.

Mr. Weigle: We would like an exception noted for the defendant. [8]

"Q. When you arrived on the premises just describe what you did with the hound and who you met.  A. I met Mr. Carlisle Hoffman and he took us around and showed us."

Mr. Moore: We wish to object for this reason: That if the court so rules that the dog testimony is to be admitted in this case, that they have not sufficiently proven this dog to be a thoroughbred or well trained for the purpose of trailing human beings as laid down in courts where that evidence is admitted.

The Court: That is a question for the jury.  Let the objection be overruled.

Mr. Moore: Note an exception for the defendant. [9]

And now, January 30, 1912, the defendant moves the court to strike from the record all evidence tending to or

relating to the trailing by the bloodhound in question, for the reason that it has not been proven that the bloodhound in question is of pure blood, and of a stock characterized by acuteness of scent and power of discrimination, and for the further reason that in this particular case the dog in question has not been proven to be possessed of those qualities, nor has it been proven that this dog has been trained during the two years prior to the trailing in question, nor has it been proven that in this case was the hound laid upon a track proven to have been made by the guilty party. [10]

Defendant presented the following point:

4. Unless the jury finds there is sufficient evidence outside of that furnished by the bloodhound, they will not be justified in convicting the defendant. *Answer:* Refused. [7]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* among others were (7) above instruction, quoting it; (8–10) rulings on evidence, quoting the bill of exceptions.

*William A. Jordon* and *A. L. Cramer*, with them *Homer R. Blair*, for appellant.—The evidence with reference to the bloodhound should have been excluded: Sprouse v. Com., 116 S. W. Repr. 344; Brott v. State, 70 Nebraska, 395 (97 N. W. Repr. 593).

*W. J. Breene*, of *Breene & Breene*, with him *Dan B. Goodwin*, district attorney, and *James S. Carmichael*, for appellee.—The evidence as to the bloodhound was proper: State v. Adams, 85 Kansas, 435; State v. Dickerson, 77 Ohio, 34 (82 N. E. Repr. 969); Pedigo v. Com., 42 L. R. A. 432.

OPINION BY ORLADY, J., October 14, 1912:

On August 12, 1911, a barn of Lewis Hoffman located in Venango county was feloniously burned. Lowrey

Hoffman, a brother of this defendant, was tried and convicted as a principal in the burning, and this appellant as an accessory before the fact to the felonious arson. The assignments of error raise but two questions, (1) The general character of the charge, in not adequately presenting the defendant's theory of the case, and in not sufficiently commenting on the testimony adduced in his behalf. This is without merit, as an examination of the charge in connection with the evidence shows clearly, that the trial judge was specially careful in presenting every material phase of the case in a clear and impartial manner, and stated, " There is such a want of harmony in the testimony of the witnesses, that it appears not to be possible for you to reach the conclusion, that they are all testifying honestly and truly, as they remember the facts. It is your duty as jurors to reconcile the testimony of all these various witnesses, if you can reach a conclusion that all are honest, that they may differ in their recollections, and may not remember things alike, but all are telling the truth as they understand it. If you can, you should do so; if you cannot, then you must determine wherein the truth lies, and you must necessarily reach a conclusion as to which of the witnesses are testifying honestly and those who are not."

The trial of the case occupied nearly five days, and the testimony taken covers 530 printed pages. It would not be possible, nor is it expected of the trial judge, that he should do more than fairly summarize such a mass of testimony. The defendant presented nine points for special instructions, seven of which were affirmed and two were refused. No just complaint can be made of this phase of the case.

The other contention is, that the court erred in admitting in evidence the conduct of a bloodhound in following a trail, and identifying the principal offender, and thus associating him with this defendant. The preliminary examination was exhaustive and after full consideration the evidence was received.

The question is a new one in this state though it has been frequently presented in others. The record shows, that about one hour and a half after the fire was discovered, a female bloodhound of pure strain and breeding about five years old, was brought to the scene of the crime, at the instance of the prosecution and taken to a point as near to the burning building as the heat would permit, and at a place from which all persons had been excluded, and where there was reason to believe from surrounding circumstances that the felon had been when the fire started, and where circumstances indicated that the party who had started the fire had been; that the bloodhound there took up a trail or scent, and followed it by tortuous windings, for a considerable distance, when the dog met Walter Hoffman in the line of the trail she was following, smelled at him, and quit working, by manifesting the usual signs that she had successfully run down the object of the search. It was further shown that the dog had been carefully trained by persons skilled in such work, to follow human tracks, and that in at least 100 tests she was found to run true to scent, and had never failed to locate the object of her pursuit, and that the person who had her in charge had owned her for over two years, and had frequently tried her out, so as to be competent to manage her in securing an initial scent, and following its trail.

It is a matter of common knowledge of which the courts are authorized to take notice, that many animals have a special innate propensity, or sagacity, which transcends the general experience of human beings. It is called a natural intuitive power; perception, or instructive quality; due to effects of habits in successive generations, or original intelligence, special to a class, in which the choice of means suitable to each particular instance is unconsciously made.

The migration of birds and fish; dread of animals of prey; invariable habits of many animals in their natural, or a domesticated state are so frequently and vividly

brought to our notice, that the existence of these special endowments cannot be ignored. We know that certain breeds of dogs are invested with special traits and gifts, peculiar to their respective kind,—the pointer and setter take instinctively to hunting birds, the hound, to foxes, deer, and rabbits. While there is no breed of dogs that instinctively hunts mankind, yet we do know that dogs are capable of being trained, or acquire the habit of their own elective preference, to follow the tracks of human beings. It is a well-known fact that bloodhounds can be trained to follow or run the track of strangers. The gift or power or instinct being already inherent in the animal, he may be induced by special training to exercise it, under the persuasive influence and training of a skilled master. Being once accurately trained in this pursuit, we may presume that his exactness depends on the capacity bestowed upon him by nature, and developed by intelligent training. All are not equally unerring, and each may fail at times in being truthful. It is a novel feature of evidence in our jurisprudence, and is attended with some danger, against which courts must guard as the occasion arises, and when the circumstances are at all doubtful.

We gather from the eminent writers on this subject, that the theory or scientific fact as it may be, is, that the path of every human being, at every step from the cradle to the grave, is strewn with putrescent excretions from the body. This waste matter is in process of decomposition and is being resolved into its constituent elements, so that its power to make an impression on the olfactory nerves of a dog, or other animal, becomes fainter with lapse of time, and exposure to the elements; and when dissolution is complete, its characteristic scent is ended. The bloodhound is endowed with an unusually keen scent, and has great ability for differentiating smells. The methods of trailing are simple and well understood. There must be an intelligent and truthful starting point, which will make an impression that the dog is able to recognize

and distinguish from all other impressions; personal
attendants and surrounding conditions may modify his
certainty, time, weather conditions and other circum-
stances must be considered in giving proper weight to the
conclusion reached.   In order to make such testimony
competent, even when it is shown that the dog is of pure
blood, and of a stock characterized by acuteness of scent
and power of discrimination, it must be established that
the dog in question is possessed of these qualities, and has
been trained and tested in their exercise, in the tracking
of human beings, by a person who has knowledge and ex-
perience in such a matter, and that the test was made by
starting the dog at a point where the circumstances tend
clearly to show that the alleged guilty party had been, at
a time when his presence would instinctively be known
to the dog.   When so indicated, testimony as to the trail-
ing by a bloodhound may be permitted to go to the jury
for what it is worth, as one of the circumstances which
may tend to connect the defendant with the crime with
which he is accused.   It is a circumstance, and the weight
to be given to it depends upon the other facts in the case.
While the cases on this subject are not numerous, they
are exhaustively considered, and the conclusion reached
by the large majority of the courts may well be ac-
cepted by us as a convincing answer to the objections
urged by the appellant.   See Pedigo v. Com., 42 L. R.
A. 432; Hodge v. State, 98 Ala. 10; Simpson v. State,
111 Ala. 6; State v. Moore, 129 N. C. 494, 55 L. R. A.
96; McClurg v. Brenton, 123 Iowa, 368, 98 N. W. Repr.
881; Sprouse v. Com., 116 S. W. Repr. 344 ; Brott v.
State, 63 L. R. A. 789; State v. Adams, 85 Kansas, 435,
35 L. R. A. (N. S.) 870; Parker v. State, 46 Tex. Cr. R.
461, 108 Am. St. Rep. 1021; Hargrove v. State, 147
Ala. 97, 119 Am. St. Rep. 60; State v. Hall, 4 Ohio Dec.
147; State v. Dickerson, 77 Ohio, 34, 122 Am. St. Rep.
479; Spears v. State, 92 Miss. 613, 16 L. R. A. (N. S.),
285.

In the case before us, every precaution suggested in

the cited cases was carefully observed by the trial judge, and the jury was directed to take such evidence into consideration in connection with the other evidence in the case, relied on by the commonwealth, for the purpose of establishing the guilt of the defendant.

The defendant presented a point (seventh assignment) "unless the jury find there is sufficient evidence outside of that furnished by the bloodhound, they will not be justified in convicting the defendant," was properly refused as it was for the jury to consider that testimony in connection with all the other evidence. It was not conclusive in and of itself, but could be considered as any other circumstance in the case, that was legitimately in evidence.

The trial was earnestly conducted by able counsel on each side, and the defendant has no reason to complain of the charge of the court.

The judgment is affirmed and the record is remitted to the court below to the end that the sentence be carried into effect.