WILL CARTER v. STATE.

[64 South. 215.]

CRIMINAL LAW.. *Evidence. Identity of accused. Trailing by blood-hounds.*

Evidence of the location of criminals by bloodhounds, after proving sufficiently the character, training and experience of the, animals, so as to show that they were accurate, certain and reliable in following the trail of human footsteps is admissible, but alone and unsupported, such evidence is insufficient to sustain a conviction, there must be other and human testimony to convict.

APPEAL from the circuit court of Desoto county.
HON. N. A. TAYLOR, Judge.
Will Carter was convicted of burglary and appeals.
The facts are fully stated in the opinion of the court.

*R. F. B. Logan,* for appellant.

The appellant, Will Carter, was indicted by the grand jury of DeSoto county, Mississippi, in February, 1913, for burglary in the breaking and entering and stealing money from S. T. Stewart's storehouse located in said county. The said storehouse was broken open before nine-thirty o'clock p. m. December 26, 1912. The bloodhounds which trailed or tracked appellant to his cabin home arrived on the scene between two o'clock and five o'clock Saturday morning, December 28, 1912, about thirty-three hours after the storehouse was broken open. The ground was soft at the time the crime was committed and had thawed once and frozen twice before the dogs arrived on the scene. The bloodhound testimony is the only evidence that connects the appellant with the crime charged. No evidence whatever, except the bloodhound evidence was introduced to connect this defendant with the crime charged. He bore a good reputation for hon-

esty in the community in which he lived, and which was testified to by a number of reputable citizens and his reputation for honesty was not impeached. We contend that the court erred in overruling the motion of the defendant to exclude the testimony of the state and discharge the defendant.

*State* v. *Spivey,* 151 N. C. 676, 65 S. E. 995, and in note, second column, 35 L. R. A. (N. S.) 872, we find this language, "It is held that evidence of the conduct of a bloodhound used by a witness for the state the day after the homicide, in tracking the defendant is not substantive, but corroborative, and is admissible after the state has paved the way for its admissibility by the introduction of other evidence as to the identity of the tracks." In the case at bar the evidence of the conduct of bloodhounds was certainly considered as substantiative as it was the only evidence introduced on the trial to connect appellant with the crime charged.

*Spears* v. *State,* 92 Miss. 613, announces the same doctrine. See middle of page 620, "The trained bloodhounds tracked defendant to his home and identified him in their peculiar way, and a track was found along the way leading to the house which corresponded to a shoe shown to have been worn at certain times by the defendant."

There was absolutely no evidence introduced in the case at bar to connect appellant with the crime charged except bloodhound testimony. Not even a shadow rested upon his reputation for honesty; on the contrary he had a good reputation in the community in which he lived. See testimony of W. H. Allen, page 50; W. McNeely, page 53; W. F. Sage, page 54; C. E. Bowen, page 59; R. H. Elder, page 60; and V. C. Langston, page 60 of the record. *State* v. *Moore,* 129 N. C. 479, 55 L. R. A. 96, see first column, 55 L. R. A., p. 98, "We do not base our opinion upon the ground that the dog, being an animal of instinct, and not possessed of reason and *ergo,* his con-

duct would not be a circumstance to be considered in connecting a person with an act or in corroborating a statement made by a witness, but upon the ground that we fail to see that it was a circumstance which would tend to connect the defendants with the larceny, or that it in any way corroborated the testimony of the witness Rountree.''

Top of page 99, first column, same book we find this language: ''This is a novel feature of evidence, and is attended with some danger, and is calculated to excite the superstition of some people that the exercise of that instinct, not possessed by human beings, is a supernatural agency in the aid of human justice, to which too great importance may be attached, and against which courts will have to guard when the occasion arises.'' *Brott* v. *State,* 70 Neb. 395, 63 L. R. A. 789, 97 N. W. 593; in this case bloodhound evidence is rejected.

*Baum* v. *State,* 6 Ohio C. C. (N. S.), 515, 27 Ohio C. C. 569, and in note in 35 L. R. A. (N. S.), second column, page 874, we find this language: ''Second, the evidence of the acts of bloodhounds in following a trail may be received merely as cumulative or corroborative evidence against the person toward whom other circumstances point as being guilty of the commission of the crime charged. In 12 Cyc. 393, we find the following: ''Evidence procured by use of bloodhounds. Where human tracks were found leading from the place of the crime, evidence that shortly thereafter a dog, if it is proved that he had been trained to and tested in following human foot tracks, followed such tracks to the defendant's house is admissible.'' In the case at bar there were no foot tracks testified to by any witness.

We have not been able to find a case anywhere holding that a defendant can be convicted on dog testimony alone. On the contrary the weight of authority seems to be, and is, that evidence of the conduct of blood hounds can be introduced only as corroborative and not substantive evidence.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

The evidence makes out the *corpus delicti,* but the evidence connecting the appellant with crime is very meager. It seems to present itself in about this way: Can a man be convicted on the unsupported testimony of the bloodhound? How can the fact that a bloodhound trailed from the scene of the crime to the place of the defendant convict without positive proof that the original trail was made by the appellant?

While I do not believe that questions of fact passed upon by a trial court and jury should be overturned by an opinion of this office, and do not believe that a confession of error is ever very helpful to the court, and believing that the judgment of the trial court should only be set aside by the supreme court itself, after the most mature consideration, still I feel, in candor, bound to say that the evidence in this case is exceedingly weak insofar as it connects the appellant with the crime.

The learning on the question of bloodhound evidence will be found collected in the case of *State of Kansas* v. *Adams,* 116 Pa. 608, and 35 L. R. A. (N. S.), 870, and note appended to the L. R. A. Report, wherein all the preceding authorities have been collected and reviewed. The collection includes the case of *Spears* v. *State of Mississippi,* 92 Miss. 613, 46 So. 166, 54 So. 241, 16 L. R. A. (N. S.), 285.

In the case of *State* v. *Spivey,* 151 N. C., cited in the brief of the appellant, and also in 35 L. R. A. 872, it is said that evidence of the action of bloodhounds is corroborative evidence as distinguished from substantive evidence. In the preceding cases in North Carolina, and especially in the case of *State* v. *Freeman,* 106 N. C. 616, it is said that it is not strictly accurate to say that it is corroborative evidence only but that it is a circumstance to be taken in connection with other circumstances in determining the question of guilt or innocence, the intima-

tion being that it is original and substantive evidence, but insufficient, taken alone, to sustain a conviction. I am strongly inclined to the opinion that this is the correct rule. I can well appreciate the advantages of introducing such evidence in ferreting out crime where there is other evidence tending to connect the appellant with the case and where the *corpus delicti* is fully established and when the proof conforms to the standard required in *Spears* v. *State,* and other cases. See, also, for discussions on this line, *State* v. *Moore,* 129 N. C. 501; *State* v. *Hunter,* 143 N. C. 607; *Pedigo* v. *Commonwealth,* 42 L. R. A., First Series, 432.

There was no affirmative proof to support the state's evidence as to the action of the bloodhounds, and the statements of the appellant when arrested as to what time he reached home on the night of the burglary contain no affirmative probative force.

The liberty of a citizen is to be held sacred, and he is presumed to be innocent until his guilt is shown beyond a reasonable doubt. The evidence did not satisfactorily disclose what might have been disclosed by the defendant himself and his witnesses, and he is not corroborated by any one as to his being at home during the entire night of the burglary, but this weakness on the defensive proof does not strengthen the state's case. I, therefore, request the court to thoroughly investigate the facts and the cases cited in 35 L. R. A., New Series, especially, and if, after so doing, they reach the conclusion that the proof is sufficient to connect the appellant with the crime to affirm the case.

REED, J., delivered the opinion of the court.

Appellant was convicted on a charge of burglary, and sentenced to the penitentiary for one year.

The store of S. T. Stewart, near Cockrum, in De Soto county, was broken into on December 26, 1912, after nightfall, and some ten dollars or twelve dollars in the cash drawer stolen. The burglary occurred between the

time when Mr. Stewart closed his store, which was, he says, between sundown and dark, and his return thereto between nine and ten o'clock. He telephoned for bloodhounds, and he placed a guard around the premises, so that the store would not be disturbed. The dogs arrived about five o'clock in the morning of December 28, 1912, at least thirty-two hours after the burglary, and thereupon trailed to appellant's house, and to appellant in person. It was established by the testimony of several citizens that appellant bore a good reputation for honesty in the community where he lived. There is no evidence to connect appellant with the crime, except the circumstance of the dogs trailing to him from the place of the burglary.

Shall a person, charged with crime, be convicted upon the fact, alone and unsupported that trained bloodhounds trailed from the scene of the crime to him? It has been held that evidence of the location of a criminal by bloodhounds, after proving sufficiently the character, training, and experience of the animals, so as to show that they were accurate, certain, and reliable in following the trail of human footsteps, is admissible. Following this rule, the admission of this class of evidence will be further governed by the conditions and circumstances of each particular case.

Such evidence may be deemed a circumstance to be considered, in connection with other proof, in determining the guilt or innocence of the accused. *State* v. *Adams,* 85 Kan. 435, 116 Pac. 608, 35 L. R. A. (N. S.) 870; *State* v. *Freeman,* 146 N. C. 615, 60 S. E. 986. Alone and unsupported, such evidence is insufficient to sustain a conviction; there must be other and human testimony to convict. In this case there was an entire failure by the state to produce affirmative proof to justify the verdict of guilty. The motion made to exclude the evidence for the state and to discharge appellant should have been sustained.

*Reversed, and appellant discharged.*