[No. 8299–0–I. Division One. February 9, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. ADAM SOCOLOF, *Appellant.*

---

*Jones & Jones* and *Roderick Jones,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Marc Boman, Deputy,* for respondent.

CORBETT, J.—Defendant appeals his conviction for first degree assault.

On September 3, 1979, at about 11:30 p.m., the victim was walking north in the 9300 block of Aurora Avenue North in Seattle. She was struck and grabbed from behind, thrown to the ground and choked into unconsciousness. Her assailant started to drag or carry her from the scene. A moment later, a passing motorist stopped his car, got out and chased the assailant north on Aurora Avenue. A nearby motel manager saw the incident and called 911. The police were passing the scene, heard the 911 assault call on their radio and arrived at the scene 15 to 20 seconds later. As they arrived, another passerby handed them a ski jacket with an open buck knife on top of it. The officer later testified that the passerby told him "the jacket was the victim's; that he had recovered the knife under the jacket from beside the victim, and that the knife did not belong to the victim." The passerby told the officer he was leaving town for his home in Utah and would be unavailable for trial.

A police canine unit was called. Officer Seth and police dog, Justice, arrived shortly thereafter. Justice tracked north on Aurora, then west on 95th, until he came to the second of two vans parked on the street. Justice lost the track at the rear of the second van, continuing on for 50 to 100 yards trying to pick up the scent.

Officer Seth brought Justice back to the van, at which time Justice gave a very strong suspect identification at the point where he had lost the track. Justice had been unable to detect the presence of the suspect the first time because the suspect had not been in the van long enough for his scent to seep out. Officer Seth further testified that the suspect could not have been in the van more than 10 or 15 minutes when Justice first passed by or Justice would have detected the scent.

The defendant, whose clothing matched the description of the assailant, was found inside the van in a sleeping bag. An empty sheath for a buck knife was found near the sleeping bag. The victim was brought to the van and identified the defendant as her assailant. At the station the defendant told police he had lost his knife that afternoon. When asked what kind of knife it was, he said "You know what kind of knife it is, you have my knife."

At the trial the court failed to give a unanimity instruction regarding the underlying charges of intent to kill, rape or kidnap, contrary to the holding in *State v. Green,* 94 Wn.2d 215, 616 P.2d 628 (1980). The State concedes that we must remand for new trial, but joins in defendant's request that we consider the issues on appeal to avoid error in the new trial.

It is the contention of defendant that he was denied the right of confrontation when the statements of the passerby to the officer at the scene were admitted. The witness had returned to Utah, but did not appear in response to a mailed subpoena. No effort was made to compel attendance, pursuant to RCW 10.55.060 (the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings).

The State relies upon ER 803(a)(1): "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Defendant contends that the

statements of the bystander were the sole evidence supporting the deadly weapon allegation and thus were "crucial" within the meaning of *Douglas v. Alabama,* 380 U.S. 415, 13 L. Ed. 2d 934, 85 S. Ct. 1074 (1965). Therefore the right to confront the bystander became critical to a fair trial. *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970).

Because there is to be a new trial, it is unlikely that the alleged error will recur. Having had what may or may not be error called to its attention, the State should now exercise caution to avoid the problem on retrial. We therefore do not decide this issue.

Defendant also contends that tracking dog evidence is in the nature of expert testimony which is not subject to cross–examination and its admission is therefore a denial of his right of confrontation. *State v. Grba,* 196 Iowa 241, 262, 194 N.W. 250, 259 (1923). Defendant points out that the dog handler cannot testify whether the dog followed a track or merely began to search for one, whether the track he followed was that of defendant or another, whether the dog abandoned the original track for another, how certain the dog was or upon what bases the dog made the fine distinction between one track and another.

This appears to be an issue of first impression in this state although the use of tracking dog evidence has been considered in many other states. There is a relevant and comprehensive annotation reported in 18 A.L.R.3d 1221 (1968). A strong majority of states favor admissibility of such evidence; however, if it is the only identification evidence upon which a conviction could be based, great care must be exercised in its admission and the evidence excluded if an adequate foundation is not laid. 1 J. Wigmore, *Evidence* § 177 (3d ed. 1940).

What must be shown as a condition precedent to

admissibility of tracking dog evidence is: (1) the handler was qualified by training and experience to use the dog, (2) the dog was adequately trained in tracking humans, (3) the dog has, in actual cases, been found by experience to be reliable in pursuing human track, (4) the dog was placed on track where circumstances indicated the guilty party to have been, and (5) the trail had not become so stale or contaminated as to be beyond the dog's competency to follow. *People v. Craig,* 86 Cal. App. 3d 905, 150 Cal. Rptr. 676 (1978); *People v. Harper,* 43 Mich. App. 500, 204 N.W.2d 263 (1972).

The testimony indicated that Officer Seth had been working with the canine unit for 7 years, had worked with Justice for 4 1/2 to 5 years, had gone through a basic training program with Justice, had attended many seminars and lectures on police dog tracking and had helped in the training of other police dogs. He and Justice had received many awards including Canine Team for the Year, furthering the German Shepherd breed and use of the breed in tracking. Justice was an experienced dog, having made approximately 500 arrests as a result of his tracking efforts. The evidence further indicated that the dog was placed on track where circumstances indicated the assault to have taken place at a time when it was improbable that the trail could have become stale or contaminated.

Officer Seth also testified that the dog communicates with him indicating through body movement whether or not the dog is on the suspect's track, depending upon the strength of the scent. Thus, a proper foundation was laid for admission of the tracking evidence in this case.

The trial court properly admitted Officer Seth's testimony as circumstantial evidence. The jury was entitled to consider all the evidence to determine the identity of the assailant.

In accord with the *Green* decision previously cited, this case is remanded for a new trial.

RINGOLD, A.C.J., and ANDERSEN, J., concur.