[Crim. No. 23419. First Dist., Div. Three. Jan. 19, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD FRED MALGREN, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jean Hagins Alexander, Acting Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, W. Eric Collins and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTT, Acting P. J.**—Ronald Fred Malgren was convicted by a jury of burglary (Pen. Code, § 459). He contends: (1) evidence of dog tracking was improperly admitted; (2) the evidence was insufficient to support the conviction; (3) the trial court should have instructed *sua sponte* that dog tracking evidence should be viewed with caution and does not by itself warrant a conviction; and (4) the court should not have instructed on flight.

### I

Viewed in the light most favorable to the judgment, the evidence established the following. Teenagers John and Amy Cox returned to their Burlingame

home one evening at about 11:15 p.m. Their parents were out of town. When they arrived, they noticed that a door which had been unlocked when they left, and which could only be locked from the inside, was locked. When they got into the house, they noticed that the front door handles or knobs had been removed. Amy screamed, and they heard a large crash from their parents' bedroom. They heard someone running down the hall and loudly pulling at the dead-bolted door which opened onto the backyard. They ran to a neighbor's, and called police.

Officer Gyselbrecht of the Burlingame Police Department arrived at approximately 11:39 p.m. with a police tracking dog, Sarge. The officer walked several steps inside the front door and commanded the dog to "track." Sarge ran down the hallway and into the bedroom. From there the dog ran through the opened and damaged back door, across the backyard, and into the adjacent game reserve. A freeway was about 100 yards behind the house; the game reserve of bushes and high grass was between the house and the freeway. Sarge tracked for approximately 35 minutes and over about seven-tenths of a mile, and then ran into some high bushes and began to growl and bite. Appellant was found in the bushes, out of breath and perspiring. The bottoms of his trouser legs were wet, and there were leaves on his jacket, and mud and grass stains on his shoes.

Later that night, a penlight was found on the fire trail approximately 75 feet north of the burglarized residence. Although the surrounding ground was wet, the penlight was dry. The next day a pair of pliers was recovered hidden at the base of a bush about five houses north of the residence. Test of metal fragments on the teeth of the pliers and of the spacing of the teeth compared with marks on the doorknobs yielded results consistent with the theory that the pliers were used in the burglary.

Appellant testified in his own defense. He claimed that he had helped a woman start her car, and she invited him for a ride. As they were driving south on the freeway, he made unflattering remarks about her car, and she told him to get out. He was walking on the freeway when the dog came along and attacked him. He ran into the bushes to escape from the dog.

II

■ Relying on *People* v. *Craig* (1978) 86 Cal.App.3d 905 [150 Cal.Rptr. 676], appellant contends the dog tracking evidence was inadmissible for lack of a proper foundation. We disagree.

While a few courts have held that evidence of the conduct of a dog who has trailed an accused is always inadmissible, the majority view is that such evidence is admissible, provided a proper foundation is laid. (See Annot.

(1968) 18 A.L.R.3d 1221; *State* v. *Bourassa* (1979) 137 Vt. 62 [399 A.2d 507]; *State* v. *Socolof* (1981) 28 Wn.App. 407 [623 P.2d 733]; *State* v. *Barger* (Tenn.Crim.App. 1980) 612 S.W.2d 485.) Consistent with the majority view, the court in *People* v. *Craig, supra,* 86 Cal.App.3d 905 held that dog trailing evidence is admissible in this state upon a sufficient showing of the particular dog's ability and reliability in tracking humans. (*Id.,* at p. 915.) While we agree that in each case the proponent of dog tracking evidence must establish the dog's ability and reliability, we believe a proper foundation must also include evidence that the circumstances of the tracking itself make it probable that the person tracked was the guilty party (see *State* v. *Bourassa, supra,* 399 A.2d at p. 510). We conclude that the following must be shown before dog trailing evidence is admissible: (1) the dog's handler was qualified by training and experience to use the dog; (2) the dog was adequately trained in tracking humans; (3) the dog has been found to be reliable in tracking humans; (4) the dog was placed on the track where circumstances indicated the guilty party to have been; and (5) the trail had not become stale or contaminated. (*State* v. *Socolof, supra,* 623 P.2d at p. 734; see *Cook* v. *State* (Del.Sup. 1977) 374 A.2d 264, 270; *People* v. *Sands* (1978) 82 Mich.App. 25 [266 N.W.2d 652, 657].)

These requirements were satisfied here. Officer Gyselbrecht testified that the department acquired Sarge in 1978, and that he [the officer] was trained at that time as the dog's handler by Robert Outman, described by the *Craig* court as an expert in dog training and handling, with particular emphasis on police dogs. (*Craig, supra,* 86 Cal.App.3d at p. 916.) In addition to that initial training, he and the dog had regularly participated in weekly maintenance training with Outman between 1978 and 1980, and with trainer James Patrick thereafter. Prior to its acquisition by the department, Sarge was trained by Outman, and was certified as 100 percent accurate. During its maintenance training, the dog continued to perform with 100 percent accuracy, and could successfully track an individual even though seven or eight people had walked over the area both before and after the track was laid. Gyselbrecht had actually used the dog on the street for tracking 15 or 20 times, and had captured 2 or 3 suspects. Sometimes the trail was interrupted by obstacles such as deep creeks or rooftops, or by the suspect's flight in an auto; on other occasions the officer called the dog back because he did not want it to track across a freeway. As for the circumstances of this tracking, the dog was placed on the trail within 20 to 25 minutes after the intruder fled from the victims' home.

Appellant's objection that trainer Patrick did not qualify as an expert on dog training and performance, and should not have been allowed to testify, is without merit. The trial court is given considerable latitude in determining the qualifications of an expert; its ruling will not be disturbed on appeal, absent a manifest abuse of discretion. (*People* v. *Kelly* (1976) 17 Cal.3d 24, 39 [130 Cal.Rptr. 144, 549 P.2d 1240].) While Patrick had no academic training in

canine psychology or other related subjects, he had many years of occupational experience as a dog trainer. (See Evid. Code, § 720, subd. (a).) He had trained about 25 dogs for police departments; that training included search work. In addition, he conducted weekly maintenance training sessions for working police dogs. We find no abuse of discretion in admitting his testimony as an expert dog trainer.

Appellant also contends that a proper foundation was not laid for the admission of evidence about a second dog, Hunter, which found the pliers in the bushes. Appellant made no objection to that testimony at trial, however, and cannot challenge its admissibility for the first time on appeal. (*People* v. *Smith* (1977) 70 Cal.App.3d 306, 317 [138 Cal.Rptr. 783].)

III

■ Appellant also contends the evidence is insufficient to support the verdict.

In *Craig, supra,* 86 Cal.App.3d 905, the court stated, without citation of authority and without amplification, that dog trailing evidence, *by itself,* is not sufficient to warrant conviction. (*Id.,* at p. 918, original italics.) Courts in those states admitting dog trailing or tracking evidence are in general agreement that such evidence alone cannot support a conviction, but we have found no consistent or clear expression of either the kind or the quantity of other evidence required, or of what that other evidence must establish. (Cf. *People* v. *Perryman* (1979) 89 Mich.App. 516 [280 N.W.2d 579, 583] [other direct evidence of guilt necessary]; *State* v. *Taylor* (1978) 118 N.H. 855 [395 A.2d 505, 507] [bloodhound evidence not in and of itself evidence a crime was committed; must be "some other evidence of guilt"]; *Meyers* v. *Commonwealth* (1922) 194 Ky. 523 [240 S.W. 71, 74] [must be "other sufficient incriminatory evidence" to uphold the conviction].) While we agree that there must be some corroborating evidence when dog tracking evidence is used to prove the identity of a criminal defendant, we see no reason to require that supporting evidence to be direct. The fact that all evidence is circumstantial does not lessen its weight, and circumstantial evidence is as adequate to convict as direct evidence. ( *People* v. *Goldstein* (1956) 139 Cal.App.2d 146, 155 [293 P.2d 495].)

We emphasize that our task is not to decide whether we believe the evidence at trial established appellant's guilt beyond a reasonable doubt, but to determine whether substantial evidence supports the conclusion of the trier of fact. We must view the evidence in the light most favorable to the judgment, presume in support of the judgment the existence of every fact the jury could reasonably deduce from that evidence, and determine whether the record discloses substantial evidence such that a reasonable trier of fact could find the appellant guilty

beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738].)

Officer Gyselbrecht arrived at the victims' home less than 30 minutes after the burglar forcibly broke open the back door and fled. The officer ordered Sarge, a well-trained, experienced, and reliable tracker, to track. Sarge led the officer through the damp, grassy game reserve behind the house to appellant, hiding in the bushes less than seven-tenths of a mile north of the house. Although the night was cold, appellant was panting and perspiring, as if he had been running. The bottoms of his pants legs were wet, and his tennis shoes were muddy and wet and grass-stained; those facts also support the reasonable inference that he had just run from the home through the game reserve.

Officer Hall, who walked along the freeway opposite the Cox home after the burglary, testified that Sarge ran past him without pausing and headed into the bushes, followed by his trainer; Hall then saw appellant emerge from the bushes. Hall had not previously seen appellant or anyone else on the freeway or on its shoulder.

Appellant was found north of the victims' home. Between the home and the bushes where he was found, officers also found a penlight, which appeared to have been recently dropped, and pliers with metal fragments in them which were consistent with their use in the burglary. The combination of all this circumstantial evidence is sufficient to support the conviction.

■ In addition to the above, appellant testified with his explanation of his midnight presence in the bushes between the Cox house and the freeway. We recognize that appellant had no burden of proof. Nevertheless, where a material fact is established by the evidence and it is shown that a defendant's testimony as to that fact is wilfully untrue, this circumstance tends to show consciousness of guilt and has probative force in connection with other evidence on the issue of such guilt. ( *People* v. *Wayne* (1953) 41 Cal.2d 814, 823 [264 P.2d 547], overruled on another ground in *People* v. *Snyder* (1958) 50 Cal.2d 190, 197 [324 P.2d 1].) Here appellant did not simply deny his guilt, but "ventured upon an explanation [for his presence in the bushes] so unusual that the triers of fact could [have] conclude[d] that it was an intentional fabrication indicating consciousness of guilt and the absence of any true exculpatory explanation." (*Ibid.*)

## IV

■ Appellant also contends the trial court erred in failing to give *sua sponte* the instruction on dog tracking evidence in *People* v. *Craig, supra,* 86

Cal.App.3d at page 917, which states that such evidence should be viewed with caution, and is not alone sufficient to warrant conviction.[1]

In criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311].)

The *sua sponte* rule " ' . . . [is] undoubtedly designed to promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of ineptness of counsel under the adversary system. . . . ' [Citation.]" (*People* v. *Flannel* (1979) 25 Cal.3d 668, 683 [160 Cal.Rptr. 84, 603 P.2d 1].) The trial court need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts. (*People* v. *Wade* (1959) 53 Cal.2d 322, 334 [348 P.2d 116].) "The duty of the trial court involves percipience—not omniscience." (*People* v. *Cram* (1970) 12 Cal.App.3d 37, 41 [90 Cal.Rptr. 393].)

It did not take omniscience to see the significance of dog tracking evidence in this case, and *Craig* was decided almost three years before appellant's trial. The principle that dog trailing evidence alone is not sufficient to warrant conviction was unquestionably a principle openly and closely connected with the facts before the court. Nevertheless, we disagree that the court was obligated to instruct that dog trailing evidence must be viewed with caution, or that such evidence is of little probative value. Unlike accomplice testimony, dog tracking evidence is not inherently suspect because of a self-interested source. (See *People* v. *Gordon* (1973) 10 Cal.3d 460, 471 [110 Cal.Rptr. 906, 516 P.2d 298].) The notion that such evidence is of slight probative value or must be viewed with caution stems at least in part from a fear that a jury will be in awe of the animal's apparent powers and will give the evidence *too much* weight. (See *People* v. *McPherson* (1978) 85 Mich.App. 341 [271 N.W.2d 228, 230].) In light of the stringent foundational requirements which must be met before such evidence is admissible at all, however, we see no reason to categorize that evidence thereafter as inferior or untrustworthy, and instruct that it be given *less* weight than other evidence. The *Craig* court itself suggested that what the law in this state actually requires is not that dog trailing evidence be viewed

---

[1]That instruction in its entirety was: "Testimony of dog trailing has been presented in this case. Such dog trailing evidence must be viewed with the utmost of caution. Such evidence must be considered, if found reliable, not separately, but in conjunction with all other evidence in the case. Dog trailing evidence alone is not sufficient to warrant conviction. In determining what weight to give such evidence you should consider the training, proficiency, experience, and proven ability, if any, of the dog, its trainer, and its handler, together with all the circumstances surrounding the trailing in question."

with caution, but that it be treated as any other evidence, with its weight left to the trier of fact. (*Craig, supra,* 86 Cal.App.3d at p. 918.)

We hold, then, that the trial court should have instructed *sua sponte* that (1) when dog tracking evidence is used to prove the identity of a defendant, there must be some other evidence, either direct or circumstantial, which supports the accuracy of that identification evidence; and (2) in determining what weight to give such evidence, the jury should consider the training, proficiency, experience, and proven ability, if any, of the dog, its trainer, and its handler, together with all the circumstances surrounding the trailing in question.

■ Finally, appellant also contends that the court erred when it instructed with CALJIC No. 2.52 (1979 rev.) (Flight After Crime).[2] We agree. It is inappropriate to give a flight instruction when the identity of the perpetrator or perpetrators who fled is in question. (*People* v. *Moringlane* (1982) 127 Cal.App.3d 811, 821 [179 Cal.Rptr. 726]; *People* v. *Salazar* (1980) 108 Cal.App.3d 992, 997-998 [167 Cal.Rptr. 38]; *People* v. *Anjell* (1979) 100 Cal.App.3d 189, 199 [160 Cal.Rptr. 669].)

■ The court's instructional errors were not prejudicial. We have no reason to believe that the jury relied only on the dog tracking evidence and rejected the other evidence of appellant's guilt. We do not believe that absent the errors, it is reasonably probable that a result more favorable to appellant would have been reached. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment is affirmed.

Barry-Deal, J., concurred.

FEINBERG, J.—I dissent.[1] First, as a matter of law, I do not believe that the evidence is sufficient to prove beyond a reasonable doubt that appellant committed the burglary; second, even assuming the sufficiency of the evidence as a matter of law, I believe the three instructional errors (two of which are conceded by the majority) were highly prejudicial in the light of the whole record.

---

[2]"The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

[1]I do agree with the majority's adoption of specific criteria that must be shown before dog-trailing evidence is admissible (*ante,* at p. 238) since this matter was not elucidated in *People* v. *Craig* (1978) 86 Cal.App.3d 905, 917-918 [150 Cal.Rptr. 676].

The only direct evidence connecting the appellant to the burglary was the fact that Sarge tracked to him. The evidence that corroborated Sarge was: (1) the unlikely location of the appellant late at night; (2) appellant's trousers were wet at the leg bottoms and his shoes were muddy and grass-stained, which could lead to an inference that he ran through the high grass of the game preserve; (3) appellant was perspiring and out of breath; and (4) a pair of pliers and a penlight were found in the same general direction from the Cox residence as the appellant.

We start with the proposition that the identity of the appellant must be proven beyond a reasonable doubt. (*People* v. *Law* (1974) 40 Cal.App.3d 69, 85 [114 Cal.Rptr. 708].) The reasons for which the minority of states[2] exclude dog-tracking evidence per se provide ample ground for requiring human corroboration and cautionary instructions: (1) the motivation actions of the dog are unreliable; (2) the evidence constitutes hearsay; (3) the defendant is deprived of the constitutional right to be confronted by witnesses against him; (4) the defendant should not be placed in jeopardy by the actions of an animal; (5) a jury might give much greater weight and importance to the evidence than it warrants because of the tracking ability which people ascribe to dogs and the affection with which dogs are regarded.

Where, as here, dog-tracking evidence is the only evidence upon which a conviction could be based, great care must be exercised in its admission and the evidence excluded if an adequate foundation is not laid. (1 Wigmore, Evidence (3d ed. 1940) § 177, p. 633.) I agree that "[h]uman life and liberty are much too sacred and too highly regarded in this country to be jeopardized or taken from the citizen, except upon testimony carrying conviction beyond a reasonable doubt." (*Meyers* v. *Commonwealth* (1922) 194 Ky. 523 [240 S.W. 71, 74].) I believe that "there must be *other and human testimony*." (*Carter* v. *State* (1914) 106 Miss. 507 [64 So. 215], italics added.)

---

[2]The following jurisdictions hold that dog-tracking evidence is inadmissible per se:

Illinois: *People* v. *Pfanschmidt* (1914) 262 Ill. 411 [104 N.E. 804] (bloodhounds held to be unreliable).

Indiana: *Ruse* v. *State* (1917) 186 Ind. 237 [115 N.E. 778] (evidence too uncertain).

Iowa: *State* v. *Grba* (1923) 196 Iowa 241 [194 N.W. 250] (evidence weak and uncertain).

Montana: *State* v. *Storm* (1951) 125 Mont. 346 [238 P.2d 1161] (evidence incompetent).

Nebraska: *Brott* v. *State* (1903) 70 Neb. 395 [97 N.W. 593] (evidence unsafe).

New York: *People* v. *Centolella* (1969) 61 Misc.2d 726 [305 N.Y.S.2d 279.]

Minnesota declined to pass upon the question of admissibility but held that in *Crosby* v. *Moriarty* (1921) 148 Minn. 201 [181 N.W. 199], no proper foundation had been laid for the evidence.

See Annot., Evidence of Trailing by Dogs in Criminal Cases (1968) 18 A.L.R.3d 1221 et seq.

As the majority concedes (*ante,* p. 239), the states that follow the majority rule of admissibility[3] agree with *People* v. *Craig, supra,* 86 Cal.App.3d at page 918, that "[d]og trailing, *by itself,* is not sufficient to warrant conviction . . . . [T]he evidence could only be sufficient to warrant conviction if supported by other evidence." (*Ibid.,* italics in original; *State* v. *Fixley* (1925) 118 Kan.1 [233 P. 796]; *Meyers* v. *Commonwealth, supra,* [240 S.W. 71]; *Daugherty* v. *Commonwealth* (1943) 293 Ky. 147 [168 S.W.2d 564]; *State* v. *Freyer* (1932) 330 Mo. 62 [48 S.W.2d 894]; *Carter* v. *State, supra,* 64 So. 215; *People v. Centolella, supra,* 305 N.Y.S.2d 279, 282; *People* v. *McPherson* (1978) 85 Mich.App. 341 [271 N.W.2d 228].)

Appellant's location, perspiration, lack of breath, and the leaves on his jacket as easily corroborate his alibi as the prosecution's case (i.e., if the appellant was fleeing the scene of the crime, why was he only 7/10 of a mile away 45 minutes later?). His trouser legs could have become damp and his feet muddy from trying to avoid Sarge, not because of the burglary but because the dog had come on his scent in the game reserve. The fact that the unidentified pair of

---

[3]The majority of jurisdictions admit dog-tracking evidence with the limitations indicated:

Alabama: *Burks* v. *State* (1941) 240 Ala. 587 [200 So. 418].

Arizona: *State* v. *Coleman* (1978) 122 Ariz. 130 [593 P.2d 684].

Arkansas: *Rolen* v. *State* (1936) 191 Ark. 1120 [89 S.W.2d 614].

California: *People* v. *Craig* (1978) 86 Cal.App.3d 905 [150 Cal.Rptr. 676].

Delaware: *Cook* v. *State* (Del.Sup. 1977) 374 A.2d 264.

Florida: *Tomlinson* v. *State* (1937) 129 Fla. 658 [176 So. 543].

Georgia: *Mitchell* v. *State* (1947) 202 Ga. 247 [42 S.E.2d 767].

Kansas: *State* v. *Netherton* (1931) 133 Kan. 685 [3 P.2d 495].

Kentucky: *Daugherty* v. *Commonwealth* (1943) 293 Ky. 147 [168 S.W.2d 564].

Louisiana: *State* v. *Green* (1946) 210 La. 157 [26 So.2d 487].

Maryland: *Terrell* v. *State* (1968) 3 Md.App. 340 [239 A.2d 128].

Massachusetts: *Commonwealth* v. *LePage* (1967) 352 Mass. 403 [226 N.E.2d 200].

Michigan: *People* v. *Harper* (1972) 43 Mich.App. 500 [204 N.W.2d 263]; *People* v. *Perryman* (1979) 89 Mich.App.516, 524 [280 N.W.2d 579] (cautionary *sua sponte* instructions required).

Mississippi: *Hinton* v. *State* (1936) 175 Miss. 308 [166 So. 762].

Missouri: *State* v. *Fields* (Mo. 1968) 434 S.W.2d 507.

New Hampshire: *State* v. *Taylor* (1978) 118 N.H. 855, [395 A.2d 505] (admissible where foundational elements met; jury must be instructed to view it with caution, etc.).

North Carolina: *State* v. *Rowland* (1965) 263 N.C. 353 [139 S.E.2d 661] (dog's pedigree required in addition to other foundational elements).

Ohio: *State* v. *Dickerson* (1907) 77 Ohio St. 34 [82 N.E. 969].

Oklahoma: *Buck* v. *State* (1943) 77 Okla.Crim. 17 [138 P.2d 115].

Pennsylvania: *Commonwealth* v. *Hoffman* (1913) 52 Pa.Super. 272.

South Carolina: *State* v. *Brown* (1916) 103 S.C. 437 [88 S.E. 21].

Tennessee: *Copley* v. *State* (1926) 153 Tenn. 189 [281 S.W. 460]; *State* v. *Barger* (Tenn.Crim. 1980) 612 S.W.2d 485.

Texas: *Parker* v. *State* (1904) 46 Tex.Crim 461 [80 S.W. 1008].

Vermont: *State* v. *Bourassa* (1979) 137 Vt. 62 [399 A.2d 507].

Washington: *State* v. *Socolof* (1981) 28 Wn.App. 407 [623 P.2d 733] (admissible where all five foundational elements met).

West Virginia: *State* v. *McKinney* (1921) 88 W.Va. 400 [106 S.E. 894].

pliers and penlight were found along the general route that Sarge took merely indicates that the burglar headed in the same general direction as the appellant.

The majority also relies, for corroboration, on the proposition that the jury, obviously disbelieving appellant's version as to how he came to be in the bushes, could have inferred that appellant, by testifying falsely, showed a consciousness of guilt, and cites *People* v. *Wayne* (1953) 41 Cal.2d 814, 823 [264 P.2d 547], in support thereof.

*Wayne* is a case where the defendant was convicted of soliciting a bribe from a bookmaker for the purpose of "buying protection" for the bookmaker from the local police. The bookmaker paid the money through a third party to the defendant. At trial, the bookmaker and the third party testified to the payment of the money to defendant and the purpose for which it was paid. The defendant testified, admitting the receipt of the money, denied it was in any way connected with bookmaking or bribery, and gave an explanation as to why he was being paid by the bookmaker which the Supreme Court characterized as "rather peculiar" (41 Cal.2d at p. 821) and "so unusual" (41 Cal.2d at p. 823).

Because the bookmaker and the go-between were accomplices, as a matter of law, their testimony had to be corroborated before a conviction could be obtained. It is in this context that the *Wayne* court made the observation concerning consciousness of guilt quoted by the majority (*ante,* p. 240).

The difference between the case at bar and *Wayne* is apparent. In *Wayne,* there was direct prosecution testimony that money had been paid to defendant for the purpose of bribing the police. The defendant admitted that he had received the money but gave what appeared to be a contrived answer as to why the money was given to him. A jury disbelieving the defendant's testimony could well believe the prosecution testimony and infer that defendant, by lying about how the money came into his possession, showed a consciousness of guilt. In the instant case, even if the jury believed that appellant deliberately lied about how he came to be in the bushes, does that show a consciousness of guilt of a burglary committed about an hour earlier at a residence almost a mile away? Suppose that the police in searching the area had found appellant in those same bushes *without the tracking dog.* Suppose further that at trial, appellant had given the identical lame explanation for his presence there. Would that show a consciousness of guilt that would support a conviction? (See *People* v. *Bamber* (1968) 264 Cal.App.2d 625 [70 Cal.Rptr. 662], and cases there cited.)

Considering the record as a whole, I am of the view that the evidence corroborative of the dog's tracking is, at best, fragmentary and insubstantial. On the other hand, I would agree that a reasonable suspicion that appellant was the burglar does arise from the evidence, but suspicion is one thing—proof beyond

a reasonable doubt is another. The means do not justify the ends. In all the cases relied upon by the majority, there was much stronger evidence as to the identity of the perpetrator in addition to the dog-tracking.

Assuming that there was sufficient evidence of the identity of the appellant to meet the burden of proof, I cannot agree with the majority that the court was not required to instruct, *sua sponte,* that the dog-tracking evidence is of little probative value and must be viewed with caution. While I agree with the majority that a *sua sponte* instruction is required as to the necessity for other direct or circumstantial evidence of the identity of the defendant (*ante,* p. 242), I would hold further that whenever the evidence is admitted after a proper foundation has been laid, the jury must be instructed to view it with caution. (Cf. *State v. Taylor, supra,* 395 A.2d 505, 507.) I do not believe that the scientific validity of dog-tracking evidence has been demonstrated even as well as voiceprinters; exercise of restraint is therefore warranted. (See *People* v. *Kelly* (1976) 17 Cal.3d 24, 32 [130 Cal.Rptr. 144, 549 P.2d 1240].) I am concerned with the matter of undue weight as evidence gleaned from the efforts of dogs has been part of our folklore for centuries.[4]

It comes down to this: Appellant has been convicted on the basis of a dog's ability to scent[5] corroborated by: (1) a pair of pliers linked to the burglary but not connected to appellant; (2) a penlight connected neither to the burglary nor to appellant; (3) a dubious "consciousness of guilt"; and (4) appellant's presence in the bushes one hour after the burglary and over seven-tenths of a mile from the burglarized house.

---

[4]As noted in *Blair* v. *Commonwealth* (1918) 181 Ky. 218, 220-221 [204 S.W. 67, 68]: "If we may credit Sir Walter Scott, such evidence was looked upon with favor as early as the twelfth century. In 'The Talisman' it is related that in the joint crusade of Richard I of England and Philip II of France, Roswell, the hound, pulled from the saddle Conrade, Marquis of Montserrat, thus mutely accusing him of the theft of the banner of England. Philip defended the marquis with the remark, 'Surely the word of a knight and a prince should bear him out against the barking of a cur.' To which Richard replied, 'Royal brother, recollect that the Almighty, who gave the dog to be companion of our pleasures and our toils, both invested him with a nature noble and incapable of deceit. He forgets neither friend nor foe—remembers, and with accuracy, both benefit and injury. He has a share of man's intelligence, but no share of man's falsehood. You may bribe a soldier to slay a man with his sword, or a witness to take life by false accusation; *but you cannot make a hound tear his benefactor; he is the friend of man save when man justly incurs his enmity.* Dress yonder Marquis in what peacock robes you will, disguise his appearance, alter his complexion with drugs, and washes, and hide himself amidst a hundred men, I will yet pawn my sceptre that the hound detects him, and expresses his resentment, as you have this day beheld.' " (Italics added.)

While the dog may have remained man's best friend through the ages, I would like to think that the law has made some progress since the reign of Richard I of England from 1189-1199.

[5]We observe that it took the dog about 35 to 40 minutes to track down appellant, a distance of about seven-tenths of a mile. The explanation seems to be that the wind blew the scent around and the dog, apparently, would lose it and then have to nose around to pick up the scent again. Obviously, this would seem to detract from the reliability of the dog-tracking here.

As against that, as conceded by the majority herein: (1) a *sua sponte* instruction should have been given but was not; (2) a "flight" instruction was given but should not have been given; and (3) in my view, an instruction should have been given that dog-tracking evidence should be viewed with caution.

The judgment should be reversed and the case dismissed because the prosecution did not sustain its burden of proof, as a matter of law. At the least, the error in instructions requires a reversal because it was prejudicial.

Appellant's petition for a hearing by the Supreme Court was denied March 23, 1983. Bird, C. J., and Grodin, J., were of the opinion that the petition should be granted.